Nathan Nicholas, Wyo. Bar #7-5078
Travis W. Koch, Wyo. Bar # 7-5418
Koch Law, P.C.
P.O. Box 2660
Cheyenne, WY 82003
(307) 426-5010
(307) 426-4927 (fax)
tkoch@kochlawpc.com
nnicholas@kochlawpc.com

Glenn D. Bellamy*
Wood Herron & Evans, LLP
600 Vine St., STE 2800
Cincinnati, OH 45202
(513) 707-0243
gbellamy@whe-law.com

Matthew A. Colvin*
Carl E. Bruce*
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
colvin@fr.com
bruce@fr.com

Ben Christoff*
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070
christoff@fr.com

**ATTORNEYS FOR PLAINTIFFS**
*Pro Hac Vice*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation, | ) ) ) ) | Case No. 2:26-cv-00018-KHR |
| *Plaintiffs*, | ) ) ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| PEAK TACTICAL, LLC d/b/a PARTISAN TRIGGERS, a Wyoming limited liability company, | ) ) ) ) ) | |
| and | ) ) | |
| NICHOLAS NORTON, an individual, | ) ) ) | |
| *Defendants*. | ) ) | |

---

## PLAINTIFFS' NOTICE OF APPEAL

---

PLEASE TAKE NOTICE that Plaintiffs in the above-named case, ABC IP, LLC and Rare Breed Triggers, Inc. ("Plaintiffs"), hereby appeal to the United States Court of Appeals for the Federal Circuit from this Court's "Order Denying Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction" (Dkt. 39), dated February 13, 2026, and from all decisions, rulings, orders, and judgments that gave rise to the non-adoption of Plaintiffs' arguments and positions in that Order, including without limitation the Court's subsequent denial of expedited discovery for possible reconsideration (Dkt. 45), dated March 11, 2026.

Dated: March 12, 2026                              Respectfully Submitted,

By:    /s/ Matthew A. Colvin
       Nathan Nicholas, Wyo. Bar #7-5078
       Travis W. Koch, Wyo. Bar #7-5418
       **KOCH LAW, P.C.**
       P.O. Box 2660
       Cheyenne, WY 82003
       (307) 426-5010
       (307) 426-4927
       tkoch@kochlawpc.com
       nnicholas@kochlawpc.com

       Ben Christoff*
       **FISH & RICHARDSON P.C.**
       1000 Maine Avenue SW, Suite 1000
       Washington, DC 20024
       Telephone: (202) 783-5070
       christoff@fr.com

       Matthew A. Colvin*
       Carl Bruce*
       **FISH & RICHARDSON P.C.**
       1717 Main Street, Suite 5000
       Dallas, Texas 75201
       Telephone: (214) 747-5070
       colvin@fr.com
       bruce@fr.com

1

Glenn D. Bellamy*
**Wood Herron & Evans, LLP**
600 Vine St., STE 2800
Cincinnati, OH 45202
(513) 707-0243
gbellamy@whe-law.com

***Pro Hac Vice***

*Attorneys for Plaintiffs*
*Rare Breed Triggers and*
*ABC IP, LLC*

2

WYD 65

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 12, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Matthew A. Colvin*
Matthew A. Colvin

3

# U.S. District Court
## District of Wyoming (Cheyenne)
## CIVIL DOCKET FOR CASE #: 2:26-cv-00018-KHR
## Internal Use Only

ABC IP LLC et al v. Peak Tactical LLC et al
Assigned to: Chief District Judge Kelly H Rankin
Referred to: US Magistrate Judge Scott P Klosterman
Case in other court: USCA 10th Circuit, 26-08010
Cause: 35:271 Patent Infringement

Date Filed: 01/15/2026
Jury Demand: Plaintiff
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**ABC IP LLC**
*a Delaware limited liability company*

represented by **Glenn D Bellamy**
Wood, Herron & Evans LLP
600 Vine Street
Suite 2800
Cincinnati, OH 45202
513-241-2324
Fax: 513-241-6234
Email: gbellamy@whe-law.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nathan A Nicholas**
Koch Law, P.C.
121 West Carlson
Ste 3
Cheyenne, WY 82009
307-426-5010
Email: nnicholas@kochlawpc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin Christoff**
Fish & Richardson
1000 Maine Ave. SW
Washington, DC 20024
202-626-7724
Email: christoff@fr.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carl Bruce**
Fish & Richardson - Carl Bruce
1 Marina Park Drive
Boston, MA 02210
617-542-5070
Email: bruce@fr.com

Certified to be a true and correct copy of
original filed in my office.
Margaret Botkins, Clerk
U.S. Courts, District of Wyoming

8:50 am, 3/17/2026

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matt Colvin**
Fish & Richardson - Matt Colvin
1717 Main Street
Ste 5000
Dallas, TX 75201
214-747-5070
Fax: 214-747-2091
Email: colvin@fr.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Travis W Koch**
KOCH LAW PC
Wyoming
P.O. Box 2660
Cheyenne, WY 82003
307-426-5010
Fax: 307-426-4927
Email: tkoch@kochlawpc.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rare Breed Triggers Inc**
*a Texas corporation*

represented by **Glenn D Bellamy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nathan A Nicholas**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin Christoff**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carl Bruce**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matt Colvin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Travis W Koch**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Peak Tactical LLC**
*a Wyoming limited liability company*
*doing business as*
Partisan Triggers

represented by **Andrew C Orr**
HOLLAND & HART LLP
Wyoming
645 South Cache Street
Suite 100
Jackson, WY 83001
307-739-9741
Email: acorr@hollandhart.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Scott Pope**
HOLLAND & HART LLP
2020 Carey Avenue
Suite 800
Cheyenne, WY 82001
307-778-4200
Fax: 307-778-8175
Email: jspope@hollandhart.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Randall Roeser**
Holland & Hart LLP
1800 Broadway
Ste. 300
Boulder, CO 80302
303-473-2700
Email: jrroeser@hollandhart.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy P Getzoff**
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80302
303-473-2734
Email: tgetzoff@hollandhart.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Douglas Swanson**
Holland & Hart LLP
555 Seventeenth Street
Ste 3200
Denver, CO 80202
303-295-8578
Fax: 303-416-8814

Email: pdswanson@hollandhart.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Nicholas Norton**                    represented by **Andrew C Orr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Scott Pope**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Randall Roeser**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy P Getzoff**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Douglas Swanson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/15/2026 | 1 | COMPLAINT against All Defendants with Jury Demand. (Filing fee $405 Receipt Number AWYDC-2724915) Attorney Travis W Koch added to party ABC IP LLC(pty:pla), Attorney Travis W Koch added to party Rare Breed Triggers, Inc. (pty:pla), filed by ABC IP LLC, Rare Breed Triggers Inc (Attachments: # 1 Exhibit Ex. A, # 2 Exhibit Ex. B, # 3 Exhibit Ex. C, # 4 Exhibit Ex. D, # 5 Exhibit Ex. E - Part 1, # 6 Exhibit Ex. E - Part 2, # 7 Exhibit Ex. F, # 8 Exhibit Ex. G, # 9 Exhibit Ex. H, # 10 Exhibit Ex. I - Part 1, # 11 Exhibit Ex. I - Part 2, # 12 Exhibit Ex. J, # 13 Civil Cover Sheet, # 14 Summons - Peak Tactical, LLC, # 15 Summons - N. Norton) (Koch, Travis) Modified text on 1/16/2026 (Court Staff, stmo). (Entered: 01/15/2026) |
| 01/15/2026 | 2 | CORPORATE DISCLOSURE filed by ABC IP LLC (no corporate parent) (Koch, Travis) Modified text on 1/16/2026 (Court Staff, stmo). (Entered: 01/15/2026) |
| 01/15/2026 | 3 | CORPORATE DISCLOSURE filed by Rare Breed Triggers Inc (no corporate parent) (Koch, Travis) Modified text on 1/16/2026 (Court Staff, stmo). (Entered: 01/15/2026) |
| 01/16/2026 | 🔒 | (Court only) Case office code has been changed from 1 (Casper) to 2 (Cheyenne). (Court Staff, stmo) (Entered: 01/16/2026) |

| 01/16/2026 | 4 | Notice of Judge Assignment and Consent to Proceed before a Magistrate Judge. The case has been assigned to the Honorable Kelly H. Rankin as Presiding Judge and the Honorable Scott P. Klosterman as Referral Judge. (Court Staff, stmo) (Entered: 01/16/2026) |
|---|---|---|
| 01/16/2026 | 5 | Summonses Issued (Court Staff, stmo) (Entered: 01/16/2026) |
| 01/16/2026 | 6 | MOTION for Preliminary Injunction , MOTION for Temporary Restraining Order filed by Plaintiffs ABC IP LLC, Rare Breed Triggers Inc. (Attachments: # 1 Proposed Order)(Koch, Travis) (Entered: 01/16/2026) |
| 01/16/2026 | 7 | MEMORANDUM in Support of 6 Motion for Preliminary Injunction, Motion for Temporary Restraining Order filed by Plaintiffs ABC IP LLC, Rare Breed Triggers Inc. (Attachments: # 1 Exhibit Ex. A, # 2 Exhibit Ex. B, # 3 Exhibit Ex. C, # 4 Exhibit Ex. D, # 5 Exhibit Ex. E, # 6 Exhibit Ex. F, # 7 Exhibit Ex. G, # 8 Exhibit Ex. H, # 9 Exhibit Ex. I, # 10 Exhibit Ex. J, # 11 Exhibit Ex. K, # 12 Exhibit Ex. L, # 13 Exhibit Ex. M, # 14 Exhibit Ex. N, # 15 Exhibit Ex. O, # 16 Exhibit Ex. P, # 17 Exhibit Ex. Q, # 18 Exhibit Ex. R, # 19 Exhibit Ex. S, # 20 Exhibit Ex. T, # 21 Exhibit Ex. U, # 22 Exhibit Ex. V, # 23 Exhibit Ex. W, # 24 Exhibit Ex. X, # 25 Exhibit Ex. Y, # 26 Exhibit Ex. Z, # 27 Exhibit Ex. AA) (Koch, Travis) (Entered: 01/17/2026) |
| 01/20/2026 | 8 | NOTICE of Attorney Appearance by Jeffrey Scott Pope on behalf of Nicholas Norton, Peak Tactical LLC (Pope, Jeffrey) (Entered: 01/20/2026) |
| 01/20/2026 | 9 | ORDER Setting Hearing and Briefing Schedule by the Chief District Judge Kelly H Rankin, re 6 MOTION for Preliminary Injunction and MOTION for Temporary Restraining Order. Plaintiffs to serve Defendants with the Complaint and Motion for Temporary Restraining Order and Preliminary Injunction on or before January 23, 2026. Defendants to file a written response to the Motion no later than January 30, 2026. The Response shall comply with Local Rule 7.1(b)(2). **IN-PERSON Motion Hearing set for 2/4/2026 at 10:00 AM in Cheyenne Courtroom No. 1 (Room No. 2132) before Chief District Judge Kelly H Rankin.** (Court Staff, smxb) (Entered: 01/20/2026) |
| 01/20/2026 | 10 | NOTICE of Attorney Appearance by Andrew C Orr on behalf of Nicholas Norton, Peak Tactical LLC (Orr, Andrew) (Entered: 01/20/2026) |
| 01/22/2026 | 11 | NOTICE by Plaintiffs ABC IP LLC, Rare Breed Triggers Inc *Report on the filing or determination of an action regarding patent or trademark* (Attachments: # 1 A0 120) (Nicholas, Nathan) (Entered: 01/22/2026) |
| 01/23/2026 | 🔒 | (Court only) Remark - Certified Report re 11 sent to U.S. Patent and Trademark Office via email (usptoinfo@uspto.gov) on this date. (Court Staff, smxb) (Entered: 01/23/2026) |
| 01/24/2026 | 12 | WAIVER OF SERVICE Returned Executed by ABC IP LLC, Rare Breed Triggers Inc. Nicholas Norton 1/23/2026, answer due 3/23/2026 (Nicholas, Nathan) Modified date on 2/2/2026 (Court Staff, smxb). (Entered: 01/24/2026) |
| 01/24/2026 | 13 | WAIVER OF SERVICE Returned Executed by ABC IP LLC, Rare Breed Triggers Inc. Peak Tactical LLC 1/23/2026, answer due 3/23/2026 (Nicholas, Nathan) Modified date on 2/2/2026 (Court Staff, smxb). (Entered: 01/24/2026) |
| 01/24/2026 | 14 | MOTION REFERRED TO Judge Scott P Klosterman. MOTION for Carl Bruce to appear pro hac vice; Check not tendered; filed by Plaintiffs ABC IP LLC, Rare Breed Triggers Inc. (Attachments: # 1 Exhibit Declaration of Carl Bruce)(Nicholas, Nathan) (Entered: 01/24/2026) |

| | | |
|---|---|---|
| 01/24/2026 | 15 | MOTION REFERRED TO Judge Scott P Klosterman. MOTION for Ben Christoff to appear pro hac vice; Check not tendered; filed by Plaintiffs ABC IP LLC, Rare Breed Triggers Inc. (Attachments: # 1 Exhibit Declaration of Ben Christoff) (Nicholas, Nathan) (Entered: 01/24/2026) |
| 01/24/2026 | 16 | MOTION REFERRED TO Judge Scott P Klosterman. MOTION for Matthew Colvin to appear pro hac vice; Check not tendered; filed by Plaintiffs ABC IP LLC, Rare Breed Triggers Inc. (Attachments: # 1 Exhibit Declaration of Matthew Colvin) (Nicholas, Nathan) (Entered: 01/24/2026) |
| 01/27/2026 | 17 | (TEXT-ONLY) NOTICE Resetting Hearing on 6 MOTION for Preliminary Injunction MOTION for Temporary Restraining Order IN-PERSON. **Motion Hearing reset for 2/4/2026 at 09:00 AM in Cheyenne Courtroom No. 1 (Room No. 2132) before Chief District Judge Kelly H Rankin.** (Court Staff, smxb) (Entered: 01/27/2026) |
| 01/27/2026 | 🔒 | (Court only) Pro Hac Vice counsel Carl Bruce verified with state bar association in Texas (Court Staff, smxb) (Entered: 01/27/2026) |
| 01/27/2026 | 🔒 | (Court only) Pro Hac Vice counsel Ben Christoff verified with state bar association in Washington, D.C. (Court Staff, smxb) (Entered: 01/27/2026) |
| 01/27/2026 | 🔒 | (Court only) Pro Hac Vice counsel Matthew A. Colvin verified with state bar association in Texas (Court Staff, smxb) (Entered: 01/27/2026) |
| 01/27/2026 | 18 | ORDER by the US Magistrate Judge Scott P Klosterman granting 14 MOTION to appear pro hac vice admitting Carl Bruce, 15 MOTION to appear pro hac vice admitting Ben Christoff, 16 MOTION to appear pro hac vice admitting Matthew Colvin for Plaintiffs ABC IP LLC, Rare Breed Triggers Inc. Emailed counsel on this date.(Court Staff, smxb) (Entered: 01/27/2026) |
| 01/27/2026 | 19 | MOTION REFERRED TO Judge Scott P Klosterman. MOTION for Timothy P. Getzoff to appear pro hac vice; Check not tendered; filed by Defendants Nicholas Norton, Peak Tactical LLC. (Attachments: # 1 Affidavit, # 2 Proposed Order)(Pope, Jeffrey) (Entered: 01/27/2026) |
| 01/28/2026 | 🔒 | (Court only) Pro Hac Vice counsel Timothy P. Getzoff verified with state bar association in Colorado (Court Staff, smxb) (Entered: 01/28/2026) |
| 01/28/2026 | 20 | ORDER by Judge Scott P Klosterman granting 19 MOTION to appear pro hac vice admitting Timothy P. Getzoff for defendants Peak Tactical LLC, Nicholas Norton. Emailed counsel on this date. (Court Staff, smxb) Modified judge on 1/28/2026 (Court Staff, smxb). (Main Document 20 replaced on 1/28/2026) (Court Staff, smxb). (Entered: 01/28/2026) |
| 01/28/2026 | 21 | MOTION REFERRED TO Judge Scott P Klosterman. MOTION for Paul Swanson to appear pro hac vice; Check not tendered; filed by Defendants Nicholas Norton, Peak Tactical LLC. (Attachments: # 1 Affidavit, # 2 Proposed Order)(Pope, Jeffrey) (Entered: 01/28/2026) |
| 01/28/2026 | 🔒 | (Court only) Pro Hac Vice counsel Paul Swanson verified with state bar association in Colorado (Court Staff, smxb) (Entered: 01/28/2026) |
| 01/28/2026 | 22 | ORDER by the US Magistrate Judge Scott P Klosterman granting 21 MOTION to appear pro hac vice admitting Paul Swanson for defendants Peak Tactical LLC, Nicholas Norton. Emailed counsel on this date. (Court Staff, smxb) (Entered: 01/28/2026) |

| 01/29/2026 | | FINANCIAL ENTRY: $100 Pro Hac Vice Fee Paid (Receipt #2-5659 for the total amount of $200 received) On Behalf of Timothy P Getzoff and Paul Swanson. (Court Staff, smek) (Entered: 01/29/2026) |
|---|---|---|
| 01/29/2026 | 23 | Notice of Pro Hac Vice Attorney Appearance by Timothy P Getzoff on behalf of Nicholas Norton, Peak Tactical LLC (Getzoff, Timothy) (Entered: 01/29/2026) |
| 01/30/2026 | 24 | Notice of Pro Hac Vice Attorney Appearance by Carl Bruce on behalf of ABC IP LLC, Rare Breed Triggers Inc (Bruce, Carl) (Entered: 01/30/2026) |
| 01/30/2026 | 25 | Notice of Pro Hac Vice Attorney Appearance by Benjamin Christoff on behalf of ABC IP LLC, Rare Breed Triggers Inc (Christoff, Benjamin) (Entered: 01/30/2026) |
| 01/30/2026 | 26 | Notice of Pro Hac Vice Attorney Appearance by Matt Colvin on behalf of ABC IP LLC, Rare Breed Triggers Inc (Colvin, Matt) (Entered: 01/30/2026) |
| 01/30/2026 | 27 | RESPONSE in Opposition re 6 MOTION for Preliminary Injunction MOTION for Temporary Restraining Order filed by Defendants Nicholas Norton, Peak Tactical LLC. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit) (Thumb drive of Exhibits 9 and 10 received and retained in Clerk's Office on 2/4/26) (Orr, Andrew) Modified text on 2/4/2026 (Court Staff, smxb). (Attachment 2 replaced to fix page orientation on 2/18/2026) (Court Staff, szf). (Entered: 01/30/2026) |
| 02/02/2026 | 28 | MOTION REFERRED TO Judge Scott P Klosterman. MOTION for Glen Bellamy to appear pro hac vice; Check not tendered; filed by Plaintiffs ABC IP LLC, Rare Breed Triggers Inc. (Attachments: # 1 Exhibit Declaration of Glen Bellamy, # 2 Proposed Order Proposed Order)(Nicholas, Nathan) (Entered: 02/02/2026) |
| 02/02/2026 | | FINANCIAL ENTRY: PAYMENT OF $100 RECEIVED FOR PRO HAC VICE FEE FOR CARL BRUCE. RECEIPT 2-5678. (Court Staff, smek) (Entered: 02/02/2026) |
| 02/02/2026 | | FINANCIAL ENTRY: $200 Pro Hac Vice Fee Paid (Receipt #2-5679 for the total amount of $200 received) On Behalf of Ben Christoff and Matthew Colvin. (Court Staff, smek) (Entered: 02/02/2026) |
| 02/02/2026 | 29 | Notice of Pro Hac Vice Attorney Appearance by Paul Douglas Swanson on behalf of Nicholas Norton, Peak Tactical LLC (Swanson, Paul) (Entered: 02/02/2026) |
| 02/03/2026 | 🔒 | (Court only) Pro Hac Vice counsel Glenn D. Bellamy verified with state bar association in Ohio (Court Staff, smxb) (Entered: 02/03/2026) |
| 02/03/2026 | 30 | ORDER by the US Magistrate Judge Scott P Klosterman granting 28 MOTION to appear pro hac vice admitting Glen Bellamy for plaintiffs ABC IP LLC, Rare Breed Triggers Inc. Emailed counsel on this date. (Court Staff, smxb) (Entered: 02/03/2026) |
| 02/04/2026 | | FINANCIAL ENTRY: PAYMENT OF $100 RECEIVED FOR PRO HAC VICE FEE FOR GLEN BELLAMY. RECEIPT 2-5686. (Court Staff, smek) (Entered: 02/04/2026) |
| 02/04/2026 | 31 | MINUTES for proceedings held before Chief District Judge Kelly H Rankin: Motion Hearing held on 2/4/2026. Motions taken under advisement. (Court Reporter Jan Davis.) (Attachments: # 1 Exhibit 1, # 2 Exhibit 3) (Thumb drive containing Exhibits A and B received and retained in Clerk's Office on 2/6/26). (Court Staff, smxb) Modified text on 2/10/2026 (Court Staff, smxb). (Entered: 02/04/2026) |

| | | |
|---|---|---|
| 02/04/2026 | 🔒 | (Court only) Motions Taken Under Advisement: 6 MOTION for Preliminary Injunction MOTION for Temporary Restraining Order (Court Staff, smxb) (Entered: 02/04/2026) |
| 02/05/2026 | 32 | Notice of Pro Hac Vice Attorney Appearance by Glenn D Bellamy on behalf of ABC IP LLC, Rare Breed Triggers Inc Filing fee $ 100, receipt number AWYDC-2733256. (Bellamy, Glenn) Modified on 2/5/2026 (Court Staff, smek). (Entered: 02/05/2026) |
| 02/06/2026 | 🔒 33 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion for Temporary Restraining Order held on 2/4/2026 before Judge Kelly H. Rankin. To purchase a copy of this transcript, please contact Court Reporter Jan Davis, phone (307) 433-2154 or email jbd.davis@gmail.com. A party must file a Notice of Intent to Request Redaction within 7 calendar days. If a party fails to request redaction, the unredacted transcript attached to this entry will be made available electronically without redaction. **THIS TRANSCRIPT MUST NOT BE ATTACHED AS AN EXHIBIT OR MADE PART OF AN APPENDIX.** . Notice of Intent to Redact due 2/13/2026. Notice of Redaction Request due 2/27/2026. Redacted Transcript Deadline set for 3/9/2026. Release of Transcript Restriction set for 5/7/2026. (Davis, Jan) (Entered: 02/06/2026) |
| 02/06/2026 | 34 | MOTION REFERRED TO Judge Scott P Klosterman. MOTION for Jeffrey R. Roeser to appear pro hac vice; Check not tendered; filed by Defendants Nicholas Norton, Peak Tactical LLC. (Attachments: # 1 Affidavit, # 2 Proposed Order)(Pope, Jeffrey) (Entered: 02/06/2026) |
| 02/06/2026 | 🔒 | (Court only) Pro Hac Vice counsel Jeffrey Randall Roeser (58486) verified with state bar association in Colorado (Court Staff, sbh) Modified text on 2/6/2026 (Court Staff, sbh). (Entered: 02/06/2026) |
| 02/06/2026 | 35 | ORDER by the US Magistrate Judge Scott P. Klosterman granting 34 MOTION for Jeffrey R. Roeser to appear pro hac vice on behalf of Defendants Peak Tactical LLC, Nicholas Norton (order emailed to phv counsel on this date) (Court Staff, sbh) (Entered: 02/06/2026) |
| 02/09/2026 | 36 | Notice of Pro Hac Vice Attorney Appearance by Jeffrey Randall Roeser on behalf of Nicholas Norton, Peak Tactical LLC Filing fee $ 100, receipt number AWYDC-2734602. (Roeser, Jeffrey) (Entered: 02/09/2026) |
| 02/11/2026 | 37 | NOTICE by Plaintiffs ABC IP LLC, Rare Breed Triggers Inc *OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF [Dkt. No. 6 ] PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (Order Granting Preliminary Injunction in ABC IP, LLC v. Hoffman, Case No. 1:25-cv-00389-CKC-CHS)* (Attachments: # 1 Exhibit A to Not of Supplemental Authority - Preliminary Injunction, # 2 Exhibit B to Not of Supplemental Authority - Memorandum Granting Preliminary Injunction) (Colvin, Matt) Modified text on 2/19/2026 (Court Staff, sjlg). (Entered: 02/11/2026) |
| 02/13/2026 | 38 | CORPORATE DISCLOSURE filed by Nicholas Norton, Peak Tactical LLC identifying Corporate Parent QOX Consulting, LLC for Nicholas Norton, Peak Tactical LLC.. (Pope, Jeffrey) (Entered: 02/13/2026) |
| 02/13/2026 | 39 | ORDER by the Chief District Judge Kelly H. Rankin denying 6 Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. (Court Staff, sesh) (Entered: 02/13/2026) |

| | | |
|---|---|---|
| 02/14/2026 | 40 | NOTICE by Plaintiffs ABC IP LLC, Rare Breed Triggers Inc *RE MULTIDISTRICT LITIGATION FILING* (Attachments: # 1 Attachment - Part 1 - Mot to Transfer and Resp, # 2 Attachment - Part 2 - Mot to Transfer and Resp, # 3 Attachment - Part 3 - Mot to Transfer and Resp, # 4 Attachment - Part 4 - Partisan Resp, # 5 Attachment - Part 5 - Not of Potential Tag-Alongs, # 6 Exhibit 1 to Attachment - Part 5, # 7 Exhibit 2 to Attachment - Part 5, # 8 Exhibit 3 to Attachment - Part 5, # 9 Exhibit 4 to Attachment - Part 5, # 10 Exhibit 5 to Attachment - Part 5, # 11 Exhibit 6 to Attachment - Part 5, # 12 Exhibit 7 to Attachment - Part 5, # 13 Exhibit 8 to Attachment - Part 5, # 14 Exhibit 9 to Attachment - Part 5) (Colvin, Matt) (Entered: 02/14/2026) |
| 02/20/2026 | 41 | MOTION for Order to Expedite Discovery filed by Plaintiffs ABC IP LLC, Rare Breed Triggers Inc. (Attachments: # 1 Proposed Order Granting for Expedited Discovery)(Colvin, Matt) Modified event on 2/24/2026 (Court Staff, sjlg). (Entered: 02/20/2026) |
| 02/20/2026 | 42 | MEMORANDUM in Support of 41 Motion to Expedite filed by Plaintiffs ABC IP LLC, Rare Breed Triggers Inc. (Attachments: # 1 Appendix A to Memo in Support of Motion for Expedited Discovery, # 2 Appendix B to Memo in Support of Motion for Expedited Discovery, # 3 Exhibit 1 to Memo in Support of Motion for Expedited Discovery, # 4 Exhibit 2 to Memo in Support of Motion for Expedited Discovery, # 5 Exhibit 3 to Memo in Support of Motion for Expedited Discovery, # 6 Exhibit 4 to Memo in Support of Motion for Expedited Discovery) (Colvin, Matt) (Entered: 02/20/2026) |
| 02/27/2026 | 43 | RESPONSE in Opposition re 41 MOTION for Order to Expedite Discovery filed by Defendants Nicholas Norton, Peak Tactical LLC. (Attachments: # 1 Exhibit Exhibit A to Response, # 2 Exhibit Exhibit B to Response) (Getzoff, Timothy) (Entered: 02/27/2026) |
| 03/05/2026 | 44 | REPLY to 43 Response in Opposition to Motion filed by Plaintiffs ABC IP LLC, Rare Breed Triggers Inc. (Colvin, Matt) (Entered: 03/05/2026) |
| 03/11/2026 | 45 | ORDER by the Chief District Judge Kelly H. Rankin denying 41 Plaintiffs' Motion for Expedited Discovery. (Court Staff, sesh) (Entered: 03/11/2026) |
| 03/12/2026 | 46 | NOTICE OF APPEAL as to 45 Order on Motion for Order, 39 Order on Motion for Preliminary Injunction, Order on Motion for TRO filed by Plaintiffs ABC IP LLC, Rare Breed Triggers Inc. (Colvin, Matt). . Transmitted to the U.S. Federal Court of Appeals for the Federal Circuit on 3/16/26. (Court Staff, smxb). (Entered: 03/12/2026) |
| 03/12/2026 | 47 | Preliminary Record of appeal sent to USCA and counsel re 46 Notice of Appeal (Attorney) **The procedures and appeals forms may be obtained from the U.S. Court of Appeals website: www.ca10.uscourts.gov.** (Attachments: # 1 Preliminary Record on Appeal Including Notice of Appeal) (Court Staff, smxb) (Entered: 03/12/2026) |
| 03/13/2026 | 48 | Appeal Number **26-8010** received from USCA for 46 Notice of Appeal (Attorney) filed by ABC IP LLC, Rare Breed Triggers Inc. Civil case docketed. Preliminary record filed. DATE RECEIVED: 03/12/2026 Fee, docketing statement, transcript order form, notice of appearance, and disclosure statement due by 03/27/2026 for ABC IP LLC and Rare Breed Triggers Inc. Notice of appearance due on 03/27/2026 for Nicholas Norton and Peak Tactical, LLC. Disclosure statement due on 03/27/2026 for Peak Tactical, LLC [26-8010] (Court Staff, smxb) (Entered: 03/13/2026) |



**FILED**

*4:04 pm, 2/13/26*

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

ABC IP, LLC, a Delaware limited liability
company, and RARE BREED
TRIGGERS, INC., a Texas corporation,

    Plaintiffs,

    vs.

PEAK TACTICAL, LLC d/b/a
PARTISAN TRIGGERS, a Wyoming
limited liability company, and
NICHOLAS NORTON, an individual,

    Defendants.

Case No. 26-CV-18-R

---

## ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [6]

---

ABC IP, LLC and Rare Breed Triggers, Inc. ("Plaintiffs") brought this action against Peak Tactical, LLC d/b/a Partisan Triggers, and its owner Nicholas Norton ("Defendants") for patent infringement and false marking and advertising. [ECF No. 1, at 1, 13]. Both parties make and sell firearms triggers. Plaintiffs assert Defendants' trigger design infringes on four of its registered patents. *Id*. at 3. On January 16, 2026, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction. [ECF Nos. 6 & 7]. The Court issued an Order requiring Plaintiffs to serve the Complaint and Motion on Defendants by January 23, 2026. [ECF No. 9]. The Order also required Defendants to respond to the Motion by January 30, 2026, and an in-person hearing was held on the

Motion on February 4, 2026. *Id*. After careful consideration of the briefing and arguments offered at the hearing, the Court denies Plaintiffs' requested relief.

**BACKGROUND**

Plaintiffs ABC IP, LLC ("ABC") and Rare Breed Triggers, Inc. ("RBT") bring claims of patent infringement, false patent marking, and false advertising under the Lanham Act against Defendants Peak Tactical, LLC ("Peak") and Nicholas Norton ("Norton"). [ECF No. 1]. Plaintiffs' claims are based on four patents they hold related to forced reset triggers ("FRTs"). *Id*. at 3. A FRT is an aftermarket firearms trigger that operates by mechanically resetting the trigger after each shot, allowing the user to make faster follow-up shots without manually releasing pressure on the trigger.

ABC owns the four patents generally related to FRTs that can be retrofitted into existing semi-automatic rifles. *Id*. The asserted U.S. Patent numbers are: 10,514,223 ("'223 Patent"); 11,724,003 ("'003 Patent"); 12,036,336 ("'336 Patent"); and 12,274,807 ("'807 Patent") (collectively, "Asserted Patents"). ABC exclusively licenses the Asserted Patents to RBT, who designs, manufactures, and sells aftermarket triggers, including the RBT FRT-15L3 trigger. *Id*. at 4. Plaintiffs allege Defendants have committed willful acts of direct, contributory, and induced patent infringement in violation of 35 U.S.C. § 271.

Defendants manufacture and distribute the Partisan Disrupter, an aftermarket FRT trigger. *Id*. at 6. Except for minor inconsequential cosmetic features in the outer housing Plaintiffs allege, "the Partisan Disruptor is a direct copy of RBT's FRT-15L3 that one of their distributors, Firearm Systems, sells for $299—$150 (or 33%) cheaper than RBT's FRT-15L3." [ECF No. 7, at 7]. Plaintiffs also allege Defendants have falsely advertised

2

their Disruptor by incorrectly describing it as an "assisted reset trigger," rather than a FRT. [ECF No. 1, at 71–73]. Plaintiffs further allege Defendants have engaged in false advertising by telling the public the Partisan Disruptor implements and is covered by U.S. Patent No. 9,146,067 ("'067"). *Id*. Patent '067 relates to an assisted reset trigger and was issued to Partisan's employee Michael Stakes before the Asserted Patents were filed.

## I.  *Plaintiffs' Motion [ECF Nos. 6 & 7]*

In the instant Motion, Plaintiffs request the entry of a temporary restraining order ("TRO") and preliminary injunction enjoining Defendants' business operations and marketing. FED. R. CIV. P. 65. They ask the Court to enjoin Defendants from: "1. making, using, offering to sell, selling, or importing the accused Partisan Disruptor product, or any substantially identical product; 2. stating publicly . . . the Partisan Disruptor is an assisted reset trigger" and "3. stating publicly . . . the Partisan Disruptor product practices U.S. Patent No. 9,146,067." [ECF No. 6-1, at 2]. Plaintiffs argue all four applicable factors for a preliminary injunction are satisfied.

First, Plaintiffs argue the patent infringement claims are likely to succeed because it is established that, "ABC owns the asserted patents and RBT is their exclusive licensee, that the accused Disruptor meets all the asserted claims and is a copycat of RBT's FRT-15L3 patent-implementing product, and [] the Defendants have never raised a substantial question of invalidity or unenforceability despite being aware of the asserted patents." [ECF No. 7, at 15–16] (citing *e.g.*, *Abbott Lab'ys v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1201 (Fed. Cir. 2007)). Plaintiffs argue their false advertising claim is likely to succeed on the merits because "the evidence establishes that Partisan willfully makes public false

statements about the design and legitimacy of the Disruptor to syphon RBT's would-be FRT-15L3 customers." *Id*. at 16.

Next, Plaintiffs claim they will suffer irreparable harm without the requested injunctive relief because of, "price erosion, loss of market share, harm to its reputation, and a loss of business opportunities." *Id*. at 26. Plaintiffs go on to argue the balance of harms weighs strongly in their favor. In particular, Plaintiffs allege Defendants' actions threaten the long-term viability of their company, while "Defendants would not suffer any legally cognizable harm in light of the fact that their actions sought to be restrained are contrary to law and would maintain the status quo." *Id*. at 29. Last, Plaintiffs argue "public interest strongly favors enforcement and protection of patent rights." *Id*. at 29 (citing *Syntex (USA) LLC v. Apotex Inc.*, Nos. C 01-02214 MJJ, C 05-02116 MJJ, 2006 WL 1390435, at *3 (N.D. Cal. May 18, 2006)).

## II. Defendants' Response in Opposition [ECF No. 27]

Defendants oppose Plaintiffs' Motion for a TRO and Preliminary Injunction and request it be denied. [ECF No. 27]. Defendants argue their Disruptor trigger does not infringe on the Asserted Patents because its operation does not satisfy several requirements in the asserted claims, and that Plaintiffs' evidence on this issue is conclusory and lacks substance. *Id*. at 6–7. Defendants go on to argue their '067 Patent predates the Asserted Patents. They contend the Disruptor not only practices the '067 Patent, but that Plaintiff's FRT triggers infringe their '067 Patent. *Id*. at 7–8.

In assessing the elements of a TRO and preliminary injunction, Defendants argue Plaintiffs are unlikely to succeed on their patent infringement claim. They argue the

4

Asserted Patents are likely invalid because of the '067 Patent and insist Plaintiffs' patent claims require claim construction. *Id*. at 11–14. Defendants go on to argue Plaintiffs have not shown likely infringement because the Disrupter does not infringe the Asserted Patents and Plaintiffs' allegations are conclusory and lack the necessary element-by-element analysis. *Id*. Defendants also argue Plaintiffs' false advertising claim is without merit because the terms "'assisted reset,' 'forced reset,' and 'positive reset' are interchangeable descriptors for the same underlying, cycling-driven reset phenomenon," and the Disruptor clearly practices claim 19 of the '067 Patent. *Id*. at 19–21.

Defendants argue Plaintiffs have failed to show irreparable harm because they delayed filing the instant suit for months after the Disruptor was available in the market, while filing six other lawsuits against dealers of the Disruptor. *Id*. at 21–24. Defendants also claim Plaintiffs' own expert analysis shows if Plaintiffs are ultimately successful in their claims, money damages would be sufficient to account for any harm. They reason monetary damages can account for lost profits, reasonable royalty, price erosion, and loss of convoyed sales. *Id*. at 24–27. Defendants assert the public interest does not favor injunctions such as the one requested, and the hardship imposed on Defendants if an injunction preventing sales of the Disruptor would be severe and would likely collapse their business while any hardship to Plaintiffs is compensable. *Id*. at 27. Last, Defendants argue the imposition of an injunction would necessitate a substantial bond to account for Defendants' business losses. *Id*. at 28–30.

**RELEVANT LAW**

## I. Applicable Law

Patent issues are governed by law of the Federal Circuit and regional circuit law applies to procedural issues—such as the issuance of preliminary injunctive relief. *See Midwest Indus. v. Karavan Trailers*, *Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) ("In reviewing district court judgments in patent cases, we apply our own law with respect to patent law issues, but with respect to nonpatent issues we generally apply the law of the circuit in which the district court sits."); *All Plastic*, *Inc*. *v. SamDan LLC*, Civil Action No. 20-CV-01318-NYW, 2021 U.S. Dist. LEXIS 24080, at *10 (D. Colo. Feb. 8, 2021) ("[T]he United States Court of Appeals for the Federal Circuit . . . has also explained that, in matters of procedure, it 'will apply the law of the regional circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law.'") (citations omitted).

## II. Temporary Restraining Orders and Preliminary Injunctions

"The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order." *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) (citing 13 JAMES WM MOORE, MOORE'S FEDERAL PRACTICE ¶ 65.36 (3d ed. 2014)). TROs chiefly differ from preliminary injunctions in duration and in that they may be granted without notice to the opposing party. *Id.*; FED. R. CIV. P. 65. The initial timeframe for a TRO is limited to fourteen days from the hour it is issued with narrow exceptions for good cause or consent allowing an extension. FED. R. CIV. P. 65(b)(2). When "a temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must

6

conform to the standards applicable to preliminary injunctions." *Sampson v. Murray*, 415 U.S. 61, 86 (1974). Additionally, "[t]emporary restraining orders are not ordinarily appealable, but preliminary injunctions are appealable." *Tooele Cnty. v. United States*, 820 F.3d 1183, 1186 (10th Cir. 2016).

A TRO's *ex parte* nature and short duration represent its purpose to preserve the status quo between the parties by preventing irreparable injury until a court can rule on the merits of a preliminary injunction. *Flying Cross Check, L.L.C. v. Cent. Hockey League, Inc.*, 153 F. Supp. 2d 1253, 1258 (D. Kan. 2001). "The status quo is defined as the last peaceable uncontested status existing between the parties before the dispute developed." *Miller v. Austin*, 622 F. Supp. 3d 1105, 1108 (D. Wyo. 2022). In contrast, preliminary injunctions "preserve the relative positions of the parties until a trial on the merits can be held." *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). "In both cases, however, injunctive relief is an extraordinary remedy." *People's Tr. Fed. Credit Union*, 350 F. Supp. 3d at 1138 (quotations omitted). This extraordinary remedy is not awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Rather, courts are required to balance the competing claims of the injury while considering the effect of granting or denying the motion upon each party. *Id.* In doing so, courts utilize a four-prong test to determine if a party is entitled to a TRO or preliminary injunction. *Free the Nipple-Fort Collins v. City of Fort Collins, Co.*, 916 F.3d 792, 797 (10th Cir. 2019).

### A. Entitlement to Preliminary Injunctive Relief

The moving party must demonstrate, (1) a substantial likelihood of success on the merits, (2) the movant would suffer irreparable harm if the motion is denied, (3) the threatened injury outweighs the opposing party's injury if the injunction is granted, and (4) granting the injunction is not contrary to public interest. *Id*. These four factors are applicable for preliminary injunctions seeking to enjoin patent infringement. *Natera*, *Inc. v. NeoGenomics Lab'ys*, *Inc*., 106 F.4th 1369, 1375 (Fed. Cir. 2024) ("To obtain a preliminary injunction, a party must establish likelihood of success on the merits, likelihood it will suffer irreparable harm absent preliminary relief, the balance of equities tips in its favor, and an injunction is in the public interest."). Public consequences of granting this extraordinary relief are particularly important for the court's consideration. *Winter*, 555 U.S. at 22. These considerations are within a district court's discretion. *Free the Nipple-Fort Collins*, 916 F.3d at 796.

### RULING OF THE COURT

After hearing testimony and reviewing the briefing on each of the four preliminary injunction factors from the parties, the Court finds each factor weighs against the imposition of a preliminary injunction. The Court will address (I) irreparable harm, (II) the likelihood of success on the merits, (III) the balance of equities between the parties, and (IV) public interest. Because TROs and preliminary injunctions are analyzed under the same structure, the Court will analyze both simultaneously.

## I. *Irreparable Harm*

"Irreparable harm, as the name suggests, is harm that cannot be undone, such as by an award of compensatory damages or otherwise." *Salt Lake Trib. Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1105 (10th Cir. 2003) (citing *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir.1986)). The Tenth Circuit has held a demonstration of probable irreparable harm is the single most important factor to consider before issuing a preliminary injunction. *Hunter v. Hirsig*, 614 F. App'x 960, 962 (10th Cir. 2015) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004)). Consequently, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Id.*

The Court will, therefore, begin its analysis by evaluating the potential for irreparable harm to Plaintiffs. To demonstrate irreparable harm, Plaintiffs must show "a significant risk that [they] will experience harm that cannot be compensated after the fact by money damages." *Mabe, LLC v. Wie*, No. 2:25-CV-00319-DBB, 2025 WL 1433910, at *3 (D. Utah May 19, 2025) (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)); *see Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012). "Erosion of market share, harm to reputation, and loss of business opportunities can constitute irreparable harm." *Mabe, LLC*, No. 2:25-CV-00319-DBB, at *3 (citing *Miche Bag, LLC v. Thirty One Gifts LLC*, No. 2:10-CV-781 TS, 2010 WL 3629686 (D. Utah Sept. 13, 2010)); *see, e.g.*, *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) (holding likelihood of price erosion and loss of market position are

9

evidence of irreparable harm); *Bio-Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996) (stating loss of revenue, goodwill, and research and development constitute irreparable harm); *Polymer Tech., Inc. v. Bridwell*, 103 F.3d 970, 975–76 (Fed. Cir. 1996) (finding loss of market opportunities cannot be quantified or adequately compensated and is evidence of irreparable harm).

Plaintiffs claim to have already suffered, and continue to suffer, irreparable harm from "price erosion, loss of market share, harm to its reputation, and a loss of business opportunities" without the requested preliminary injunction. [ECF No. 7, at 20] (quotations and citations omitted). In examining irreparable harm, the Court will address (A) loss of business opportunities, (B) price erosion, (C) loss of market share, and (D) reputational harm.

### A. Loss of Business Opportunities

Plaintiffs argue their risk of irreparable harm is heightened because of the "durable, long-lasting nature of the products in question" where an individual gun owner "likely only needs to buy one trigger product for the life of his or her rifle—which can survive generations." [ECF No. 7, at 26]. Defendants contend the products' durability underscores the reality "any lost sales would be fully compensable by lost profit monetary damages." [ECF No. 27, at 9]. The Court finds a demonstration of lost business opportunities is insufficient to independently establish irreparable harm.

During the hearing, Plaintiffs argued Defendants' own sales projections demonstrate Plaintiffs' lost business opportunities. Specifically, Defendants' projections anticipate they will sell more than 1.68 million triggers over the next three years. [ECF No.

33, at 95]. Plaintiffs argue each trigger sold by Defendants results in their loss of sales. *See id.* at 122; [ECF No. 7, at 26]. Plaintiffs' Declaration of Samir P. Warty, Ph.D. furthers this argument, claiming, "[i]n markets for durable or semi-durable goods, lost sales caused by substitution are generally permanent rather than deferred. Unlike consumable goods, which may be repurchased frequently, durable goods are typically acquired on a one-time or infrequent basis." [ECF No. 7-27, at 7]. Plaintiffs offered testimony they collect approximately $350 profit on each trigger sold and allege they will lose over $500 million in profits based on Defendants' own projections. [ECF No. 33, at 95].

However, "lost sales standing alone are insufficient to prove irreparable harm." *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 300 (Fed. Cir. 2009). If lost sales were sufficient, "irreparable harm would be found in every case involving a 'manufacturer/patentee, regardless of circumstances.'" *Id.* at 300–01 (quoting *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed.Cir.2006)). Without more, lost sales "are presumed to be compensable through damages, so they do not require injunctive relief." *Id.* at 301. Consequently, no amount of lost revenue alone may support a finding of irreparable harm. *Id.* The Court now considers price erosion as a basis for irreparable harm.

## B. Price Erosion

Price erosion refers to a "theory of lost-profits remedy that measures the difference between what an item could have sold for with patent protection and what it actually sold for while having to compete against an infringing team." *Price-Erosion Theory*, BLACK'S LAW DICTIONARY (12th ed. 2024). Plaintiffs suggest Defendants' entry into the FRT market will lead to price erosion because Defendants' $300 trigger price is 33% less than

their $450 price point. [ECF No. 7, at 27]. Plaintiffs again look to the Declaration of Dr. Warty who states, "[o]nce buyers internalize a lower reference price, firms may find it difficult to return to prior price levels without losing sales," suggesting price erosion can lead to irreparable harm in a given market. [ECF No. 7-27, at 11]. While Plaintiffs' argument, including Dr. Warty's Declaration, correctly identifies price erosion as a potential source of irreparable harm, Plaintiffs offer only conclusory statements in support of its potential presence here.

Plaintiffs allude to the price discrepancy between the two products at issue but have not offered (1) any evidence they have or will likely be forced to drop their price nor (2) any projections or analysis of how potential price erosion has or will harm their business. Plaintiffs stated the quantifiable loss of sales it will suffer if not granted injunctive relief does not consider the "harm identified by Dr. Warty addressing issues of price erosion." [ECF No. 33, at 135]. The Court has been presented some data regarding Defendants' sales and future sales projections. *See id*. at 95. While Plaintiffs mentioned their current price of $450 being 33% higher than Defendants' price point, they failed to indicate whether this price point has been static or whether it has already suffered from price erosion. Aside from a cursory statement made in the hearing, no assertions have been made evidencing injury suffered from price erosion. *See id*. at 135 (stating, "[o]ur client has had to lower its prices due to market competition."). Moreover, no evidence of Plaintiffs' sales data before or after Defendants' entry into the FRT market has been presented and no future projections have been provided. *See id*. at 121–22.

Flat assertions of price erosion with no supporting market analysis are insufficient to demonstrate irreparable harm. *See Potato Ventures LLC v. P'ship & Unincorporated Ass'n Identified on Schedule A*, No. 25-2312-DDC-RES, 2025 WL 2256204, at *9 (D. Kan. Aug. 7, 2025) (declining to find irreparable harm where the plaintiff failed to present any sales data or market share before or after the infringing defendant entered the market); *Voile Mfg. Corp. v. Dandurand*, 551 F. Supp. 2d 1301, 1307 (D. Utah 2008) (stating, "Courts require more than unsupported factual conclusions to support" a finding of irreparable harm); *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017) (requiring causal nexus between infringement and harm); *Travel Tags, Inc. v. UV Color, Inc.*, 690 F. Supp. 2d 785, 800 (D. Minn. 2010) (explaining declaration insufficient to show irreparable harm in patent case where declarant assumed without support that defendant's prices "were solely responsible for [plaintiff's] price erosion").

Further, Plaintiffs have not adequately rebutted Defendants' assertion price erosion is calculable and redressable by monetary damages. *See Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 711 F.3d 1348, 1378 (Fed. Cir. 2013) ("Lost revenue caused by a reduction in the market price of a patented good due to infringement is a legitimate element of compensatory damages.") (citations omitted). Defendants argue if Plaintiffs are successful at trial, then economic harm from price erosion can be addressed, "by applying Plaintiffs' pre-litigation market price to the lost units to account for market price erosion, thus making Plaintiffs whole for the lost sales and price erosion resulting from the alleged infringement and other wrongful acts." [ECF No. 27-1, at 11] (footnote omitted). The Court finds any alleged harm to Plaintiffs' consumer perception due to

13

potential price fluctuation is best addressed under reputational harm below. The Court finds this consideration does not demonstrate irreparable harm because Plaintiffs have not offered evidence indicating harm from price erosion nor shown any damages are not compensable by money damages.

### C. Loss of Market Share

Plaintiffs next argue, "[p]ermanent market displacement in a market like this cannot be resolved after the fact." [ECF No. 33, at 13]. Their expert asserts, "market share influences dealer attention, customer awareness, and expectations about which products are likely to remain available and supported. When substitution persists over time, these secondary effects can reshape the incumbent's competitive position in ways that are not reversed simply by a later change in legal outcome." [ECF No. 7-27, at 8]. Defendants counter, "in the event Plaintiff prevails at trial and obtains a permanent injunction, according to their own expert's description of the market, Plaintiffs will be able to quickly recapture all sales going forward." [ECF No. 27, at 25]. The Court finds consideration of loss of market share weighs against granting the requested relief.

The Court acknowledges, "the right to exclude others from a specific market, no matter how large or small that market, is an essential element of the patent right." *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1262–63 (D. Kan. 2009) (citing *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996)) ("[T]he principal value of patent is its statutory right to exclude, so nature of patent weighs against holding that monetary damages will always suffice to make patentee whole."). For the loss of market share to be irreparable, it must be both difficult to quantify and difficult to repair. *See Salt Lake Trib.*

14

*Pub. Co., LLC*, 320 F.3d at 1105. "There is an inverse relationship between the potential for price erosion and loss of market share." *In re BRCA1- & BRCA2-Based Hereditary Cancer Test Pat. Litig.*, 774 F.3d 755 n.27 (Fed. Cir. 2014). If the company claiming infringement lowers its prices in response to competition, price erosion will be higher, but it will maintain its share of the market—decreasing market share losses. *See id*.

In discussing market displacement, Plaintiffs rely on their expert's contention, "[d]istribution networks are not merely conduits for price transmission but are central to a supplier's competitive position. . . . Once either level of the distribution chain has invested in these product-specific capabilities, those investments may not readily transfer back to the original supplier's product even if the competing product is later enjoined." [ECF No. 7-27, at 10]. This sub-factor again suffers from a fatal flaw in Plaintiffs' allegations. While Plaintiffs include some evidence of Defendants' dealer network, Plaintiffs include no evidence they too have an established dealer network. *See* [ECF No. 33, at 21–23]. Without evidence of an established dealer network, the concept of market position through distribution networks being difficult to "repair" is somewhat misplaced. This omission makes Plaintiffs' claims of displacement appear increasingly attenuated where no evidence of Plaintiffs' sales statistics have been presented and no evidence of shifting dealer loyalty can be produced. The Court finds Plaintiffs' allegations of loss of market share is inadequate support for irreparable harm.

### D. Reputational Harm

Plaintiffs claim, "Defendants' undercutting of RBT's price by itself harms RBT's reputation by incorrectly suggesting to customers that RBT's pricing is uncompetitive."

[ECF No. 7, at 27]. They also mentioned Defendants' alleged attempts to label RBT as a "greedy bully" in online forums. *See id*. When referring to the apparently quantifiable damages, Plaintiffs argued even when a permanent injunction is issued and price erosion is no longer a factor, the prevailing party still suffers reputational harm. [ECF No. 33, at 135]. Defendants claim any assertion of reputational harm is conclusory and speculative. They argue, "there is no claim that customers will be confused between the two products. If Plaintiffs' products are superior, they will enjoy whatever reputational advantage flows therefrom." [ECF No. 27, at 26]. Defendants conclude Plaintiffs may not base reputational harm on their product simply receiving less favorable market reception than its competitors. *Id*.

In this context proving reputational harm does not require a showing of any elements required to prove defamation. Rather than evidence of false statements and publication to third parties, the moving party must offer evidence of a reputational loss stemming from the underlying tort—altering how customers perceive the product and making the resulting harm persistent and difficult to quantify. *See Snyder v. Am. Kennel Club*, 575 F. Supp. 2d 1236, 1242 (D. Kan. 2008) ("finding loss of reputation not irreparable where plaintiff provided no evidence of risk of loss of prestige, academic reputation, or professional opportunities that could not be remedied by money damages.") (parenthetically citing *Schrier*, 427 F.3d at 1267 (10th Cir. 2005)); *Fish v. Kobach*, 840 F.3d 710, 751–52 (10th Cir. 2016). Here, Plaintiffs have presented insufficient evidence of price erosion and loss of market share. While Plaintiffs have provided evidence of the publication of allegedly false statements online, the threshold inquiry for this equitable consideration is whether the

harm ultimately stems from the patent infringement or false marking and advertising. *See Limitless Worldwide*, *LLC v. AdvoCare Int'l*, *LP*, 926 F. Supp. 2d 1248, 1254 (D. Utah 2013); *Dominion Video Satellite*, *Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001).

Plaintiffs have presented evidence of Defendants' negative online statements about their business and price point. They have presented no evidence of how these statements have impacted public perception of their brand—and more directly, any defamatory damage to Plaintiffs is irrelevant to this consideration without demonstrating this reputational harm flows from the underlying torts alleged. The variation in price points between the two products could present a basis for reputational harm as Plaintiffs suggested, but they have included no evidence indicating their reputation has been, or will imminently be, damaged. Speculative harm is not sufficient. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009); *see Lovesac Co. v. www.lovessac.com*, No. 2:22-CV-00056-JNP, 2022 WL 504192, at *4 (D. Utah Feb. 18, 2022).

Because Plaintiffs have not affirmatively demonstrated a resulting injury which could be tied to their alleged reputational harm, the Court finds this consideration does not support a finding of irreparable harm. Despite this finding, the Court will now address Plaintiffs' likelihood of success on the merits. *Amazon.com*, *Inc. v. Barnesandnoble.com*, *Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) ("Our case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm.") (emphasis in original).

## II.  *Likelihood of Success on the Merits*

Plaintiffs include claims for (1) patent infringement and (2) false advertising as the basis for the injunction. In seeking a TRO or preliminary injunction the movant bears the burden of demonstrating a likelihood of success on the merits. *Altana Pharma AG v. Teva Pharms. USA*, *Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009). Specifically, as to the first claim, it must be demonstrated, in light of the presumptions and burden that will apply at trial, "(1) the patentee will likely prove the accused infringer infringes the asserted patent; and (2) the patentee's infringement claim will likely withstand the accused infringer's challenges to the validity and enforceability of the patent." *Won-Door Corp. v. Cornell Iron Works*, *Inc.*, 981 F. Supp. 2d 1070, 1074 (D. Utah 2013) (quoting *Sciele Pharma*, *Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012)). A court should not issue a preliminary injunction if the accused infringer raises a "substantial question" as to either infringement or validity of the patent. *Amazon.com*, *Inc.*, 239 F.3d at 1350–51

Second, to demonstrate a reasonable likelihood of success on its false advertising claim under the Lanham Act, Plaintiffs must establish (1) Defendants presented a false or misleading description or representation about a product:

> (2) the misrepresentation is material, in that it is likely to influence consumers' purchasing decisions; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) [Defendants] placed the false or misleading statement in interstate commerce; and (5) [Plaintiffs have] been or [are] likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by lessening of goodwill associated with its products.

*Zoller Lab'ys*, *LLC. v. NBTY*, *Inc.*, 111 F. App'x 978, 982 (10th Cir. 2004) (alterations added); 15 U.S.C. § 1125(a)(1)(B); *Wyoming Beverages Inc. v. Core-Mark Int'l*, *Inc.*, No.

17-CV-116-F, 2018 WL 8221068, at \*13 (D. Wyo. Jan. 4, 2018). The Court finds Plaintiffs have not demonstrated they are likely to be successful on the merits on their claims. The Court will first address Plaintiffs' claim of (A) patent infringement then (B) false advertising.

### A. Patent Infringement

"A party establishes infringement in one of two ways: literal infringement of the claim language or infringement under the doctrine of equivalents." *FBA Operating Co. v. ETN Capital, LLC*, No. 5:23-CV-505-D, 2023 U.S. Dist. LEXIS 182297, at \*4–5 (E.D.N.C. Oct. 10, 2023) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 35 (1997)). "Literal infringement occurs where the allegedly infringing device includes 'each and every limitation of the asserted claim(s).'" *Id.* (quoting *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1166 (Fed. Cir. 2014)). "Infringement under the doctrine of equivalents occurs where the allegedly infringing device 'performs substantially the same function in substantially the same way to obtain the same result' as the patented product." *Id.* (citations omitted).

To establish a likelihood of success on a patent infringement claim, Plaintiff must show the accused product likely infringes at least one patent asserted. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc). This analysis "entails two steps, the first step is determining the meaning and scope of the patent claims asserted to be infringed, the second step is comparing the properly construed claims to the device accused of infringing." *Id.* Plaintiff fails to meet this burden in two ways: (1) the material claim construction disputes preclude a finding of likely infringement and (2)

19

defendants have raised serious and substantial questions regarding validity. The Court will address (1) claim construction then (2) claim validity.

### 1. Claim Construction

"For claim construction, the court must: (1) analyze 'the text of the patent and its associated public record,' (2) apply 'the established rules of construction,' and (3) 'arrive at the true and consistent scope of the patent owner's rights to be given legal effect.'" *FBA Operating Co.*, No. 5:23-CV-505-D, at *4–5 (quoting *Markman*, 52 F.3d at 979). The Federal Circuit has made clear, "the interpretation and construction of patent claims . . . is a matter of law exclusively for the court." *Id*. at 970–71. Thus, where the parties present competing interpretations of claim scope, the Court must resolve any fundamental disputes before proceeding with the infringement analysis. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) (explaining that "only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy"). The Court will (i) outline the relevant text of the patents and (ii) apply the established rules of construction.

### i. Text of the Patents

"The '003, '336, and '807 Patents are related and share a common specification, as the '336 and '807 Patents are continuations of the '003 Patent." [ECF No. 7, at 10]. "These patents all describe and claim a device similar to that of the '223 Patent, but with the additional feature that it 'provides a 'three position' trigger mechanism having safe, standard semi-automatic, and forced reset semi-automatic positions." *Id*. at 10–11

20

(citations omitted); *see* [ECF No. 1-1, at 10–11] (claim 4 of '223 Patent); [ECF No. 1-2, at 28] (claim 4 of '003 Patent); [ECF No. 1-3, at 28] (claim 3 of '336 Patent); [ECF No. 1-4, at 28] (claim 1 of '807 Patent).

Defendants identify a portion of the respective claims, stating:

[W]hereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

[W]hereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the ***substantially in-battery*** position the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

[ECF No. 1-2, at 28] (claim 4 of '003 Patent) (emphasis added); [ECF No. 1-3, at 28] (claim 3 of '336 Patent) (emphasis added); [ECF No. 1-4, at 28] (claim 1 of '807 Patent) (emphasis added); *see also* [ECF No. 27, at 16] (quoting '807 Patent, claim 1, '336 Patent, claim 3, '003 Patent, claim 4).

Defendants state, "[t]he patents themselves define the 'set position' . . . as the state 'wherein said sear and sear catch are in engagement in said set positions of the hammer and trigger member and are out of the engagement in said released positions of said hammer and trigger member." [ECF No. 27, at 17] (quoting '807 Patent, claim 1, '336 Patent, claim 3, '003 Patent, claim 4).

## ii.  Application of Established Rules of Construction

Claim terms are generally given their "ordinary and customary meaning," the meaning they would have to "a person of ordinary skill in the art at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). "We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history." *Schmeisser GmbH v. AC-Unity d.o.o*, No. 21-CV-24-SWS, 2021 WL 7286256, at \*5 (D. Wyo. Mar. 19, 2021) (quotations omitted) (quoting *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005)). When analyzing claim construction, courts typically rely on intrinsic evidence including a patent's specifications and prosecution history. Extrinsic evidence such as expert testimony or a dictionary definition may also be considered. *Id.* (quoting *Bushnell, Inc.*, 673 F. Supp. 2d at 1250).

A court will not give the words of a claim their ordinary meaning "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1580 (Fed.Cir.1996)). "To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Id.* (citation omitted). Disavowal of a claim term comes into play, "'[w]here the specification makes clear that the invention does not include a particular feature, [and] that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the

22

specification, might be considered broad enough to encompass the feature in question.'"

*Id*. at 366 (alteration added) (quoting *SciMed Life Sys*., *Inc. v. Advanced Cardiovascular Sys*., *Inc.*, 242 F.3d 1337, 1341 (Fed.Cir.2001)).

Here, material disputes exist regarding the meaning of claim terms that are central to the infringement analysis. In particular, Defendants dispute the scope of the phrase "substantially in-battery position." [ECF No. 27 at 14–15]; *see* [ECF No. 33, at 74–75]. Defendants claim this phrase "is 'a timing gate' for when a 'locking member' transitions from blocking to permissive," meaning it determines when the mechanism transitions from a blocked state to one in which firing is permitted. [ECF No. 27, at 14]. Defendants argue this phrase has more than one interpretation when applied to the AR pattern operating cycle. *Id*. Plaintiffs, by contrast, treat the phrase as having an obvious and straightforward meaning. [ECF No. 7, at 23–25]. As such, Plaintiffs do not attempt to offer an express definition of the term, nor do they address Defendants' claimed definition of "set position" from the Asserted Patents. *See* [ECF No. 27, at 17]

Drawing on the patents' specifications, Plaintiffs generally state, "when the trigger is pulled, the hammer contacts the firing pin, thereby causing the ammunition cartridge to discharge. . . This discharge causes the bolt carrier (52) to move rearward, and a lower surface of the bolt carrier hammer pushes against the hammer which in turn forces the trigger . . . to return to its reset position." [ECF No. 7, at 10] (citations omitted). After that, "[a] locking bar (62) prevents the trigger member from being pulled again by the user until the bolt carrier (52) has returned to the original or 'in-battery' position." *Id*. (citations omitted).



FIG. 5

[ECF No. 7, at 10] (citing '233 Patent, Fig. 5 ("showing the bolt carrier 52 forcing the hammer 18 and trigger 26 back into its reset position")).

Defendants' expert argues, "substantially in-battery position" could reasonably be interpreted to include: "(1) a meaning close to fully in battery (i.e., at or essentially at the in-battery condition), versus (2) a meaning that includes a broader band of near-battery positions during forward travel." [ECF No. 27-2, at 38]. He continues, "[t]he phrase also raises a second critical ambiguity: whether the claim requires the bolt carrier contact/unlocking to occur at the moment the carrier 'reaches' that substantially in-battery condition (a narrow dimensional/timing window), or whether unlocking earlier would suffice so long as the carrier later becomes substantially in-battery." *Id*. at 39. Relying in part on the asserted claims' repeated requirement the bolt carrier reach a "substantially in-battery position," he concludes, "the meaning of that phrase is both disputed and potentially outcome-determinative." *Id*.

24

Neither Plaintiffs nor their expert attempt an express definition of "substantially in-battery position." As relevant to the disputed term, Plaintiffs' expert states, "the trigger described in the Asserted Patents and the Rare Breed trigger operate by the trigger being forcibly pushed into the reset position, with the sear engaging the hammer, each time the action cycles (i.e., each time a shot is fired)." [ECF No. 7-17, at 3–4]. He goes on, "[a]nother shot cannot be fired until the bolt returns to the in-battery position and the trigger is pulled again by the user." *Id.*

Plaintiffs essentially refrain from providing a direct rebuttal to the disputed terms and mechanics presented by Defendants. However, depending on how "substantially in-battery" is construed, the timing requirements of the claims change. Because infringement analysis depends on the Court first resolving the disputed claim term ("substantially in-battery position") the Court cannot properly compare the asserted claims to the accused device without first construing the meaning and scope. *See Markman*, 52 F.3d at 976; *O2 Micro*, 521 F.3d at 1362. The Court finds there is insufficient evidence presented to properly make a comparison between the two products. Accordingly, Plaintiffs cannot demonstrate literal infringement or infringement under the doctrine of equivalents, nor a clear likelihood of success on the merits at this stage. *See Markman*, 52 F.3d at 976; *Amazon.com, Inc.*, 239 F.3d at 1351 ("Only when a claim is properly understood can a determination be made whether the claim 'reads on' an accused device or method, or whether the prior art anticipates and/or renders obvious the claimed invention."). Nonetheless, the Court will proceed to address the validity of Plaintiffs' patents in demonstrating its likelihood of success on its patent infringement claim.

## 2. *Validity*

At the preliminary-injunction stage, the Court "does not resolve the validity question," but instead assesses the persuasiveness of the parties' evidence "recognizing that it is doing so without all evidence that may come out at trial." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009) (quotations omitted) (quoting *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882–83 (Fed. Cir. 1992)). Patents enjoy a statutory presumption of validity. *Id.* If the alleged infringer responds to a preliminary-injunction motion by "launching an attack on the validity of the patent, the burden is on the challenger to come forward with evidence of invalidity, just as it would be at trial." *Id.* "The patentee, to avoid a conclusion that it is unable to show a likelihood of success, then has the burden of responding with contrary evidence, which of course may include analysis and argument." *Id.*

Although invalidity ultimately must be proven at trial by clear and convincing evidence, that evidentiary standard does not apply at the preliminary-injunction stage. *Id.* at 1377–79. Thus, if the challenger presents evidence raising a "substantial question" of validity and the patentee cannot demonstrate it "lacks substantial merit," the patentee has not demonstrated a likelihood of success on the merits warranting preliminary relief. *Id.* (quoting *New England Braiding*, 970 F.2d at 883). Here, Plaintiffs have not shown they are likely to withstand Defendants' invalidity challenges. The Court will address (i) Defendants' theory supporting the invalidity of Plaintiffs' patents and (ii) Plaintiffs' burden to overcome that showing.

26

### i.  Defendants' Substantial Question of Validity

Defendants' principal invalidity theory is tied to obviousness under 35 U.S.C. § 103, which provides:

> A patent for a claimed invention may not be obtained . . . if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.

35 U.S.C. § 103.

"[A] patent composed of several elements is not proved obvious by demonstrating that each of its elements was, independently, known in the art." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). Rather, the appropriate inquiry is "whether the subject matter would have been obvious to a person of ordinary skill in the art at the time of the asserted invention." *In re Kahn*, 441 F.3d 977, 985 (Fed. Cir. 2006). Although an incentive to combine prior-art references may be inferred from the nature of the problem to be solved, there must be "some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008).

The Court finds Defendants have raised a substantial question of validity. Defendants' validity challenge rests on a multi-layered obviousness theory grounded in, 35 U.S.C. § 103 and *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406, 415–16 (2007). [ECF No. 27, at 11]. They contend the '067 Patent and the TacCon 3MR long predate the Asserted Patents and disclose the same core forced-reset architecture embodied in the asserted claims. *Id.* at 11–14. They argue longstanding prior art references the claimed locking and

27

gating features, and the Asserted Patents merely combine these familiar elements in predictable ways. *Id.* at 13; *see KSR Int'l Co.*, 550 U.S. at 416 ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."). Defendants contend the prosecution histories also reflect limited consideration by the Patent Office of this prior art, including the TacCon 3MR and the '067 Patent. [ECF No. 27, at 8]. Defendants need to only raise a "substantial question" of invalidity at this stage. *Titan Tire*, 566 F.3d at 1377–79. The Court finds Defendants' evidence of the '067 Patent and their prior-art analysis with added support through expert declaration is sufficient to meet this standard. *Amazon.com, Inc.*, 239 F.3d at 1359 ("Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial.").

### ii. Plaintiffs' Burden

Once Defendants have raised a substantial question of validity, the burden shifts back to Plaintiffs to demonstrate the asserted validity defenses lack substantial merit. *Id.* Plaintiffs have not carried their burden. Plaintiffs raised numerous contentions in their closing statements—including the nonexistence of Defendants' expert's claim charts and alleged proof the '067 Patent was looked at and considered by the Patent Office. [ECF No. 33, at 130–32]. Although these arguments call into question some of Defendants arguments, they fail to demonstrate the Defendants validity challenges, "lack substantial merit." *See Titan Tire* 566 F.3d at 1377–79. Additionally, contrary to Plaintiffs' arguments the Defendants need only raise a substantial question of invalidity at this stage and do not need to prove their invalidity by clear and convincing evidence. *See id.*; *Amazon.com, Inc.*,

239 F.3d at 1359 ("The showing of a substantial question as to invalidity thus requires less proof than the clear and convincing showing necessary to establish invalidity itself."); [ECF No. 33, at 13, 130–31]. Material claim construction disputes preclude a finding of likely infringement, and Defendants have raised substantial questions regarding validity. Collectively, Plaintiffs have failed to meet the burden of demonstrating a likelihood of success on the merits for patent infringement. The Court now turns to Plaintiffs' claim of false advertising.

### B. False Advertising

Under the Lanham Act, a plaintiff must show the defendant made a false or misleading representation by demonstrating the statement was either facially false or likely to have the effect of misleading consumers. *Zoller Lab'ys*, *LLC*., 111 F. App'x at 982. "Where the advertisement is literally false, a violation may be established without evidence of consumer deception" and, "the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public." *Id*. (quotations omitted) (quoting *Scotts Co. v. United Indus. Corp*., 315 F.3d 264, 272 (4th Cir.2002), and *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare*, *L.P*., 131 F.3d 430, 434 (4th Cir.1997)). "[F]actfinders usually base literal falsity determinations upon the explicit claims made by an advertisement[.]" *Id*.

Plaintiffs assert two bases for their false advertising claim against Defendants. [ECF No. 7, at 25–26]. First, Plaintiffs state Defendants falsely represent the Partisan Disruptor is an "assisted reset trigger" instead of a forced reset trigger. *Id*. at 25. They assert the labels are mutually exclusive and explain, "the two triggers are designed and operate in different

ways: whereas a forced reset trigger uses a mechanism to ***fully*** reset the trigger, an assisted reset trigger's mechanism only ***partially*** resets the trigger." *Id*. (emphasis in original). Second, Plaintiffs argue, "Partisan incorrectly claims that their Disruptor is covered by the '067, on which Partisan's employee Michael Stakes is a named inventor." *Id*. at 26. They contend this representation is likely to mislead consumers by falsely increasing the perceived legitimacy of the product.

Defendants claim they have not made any false or misleading representations. [ECF No. 27, at 19]. Defendants rely on their expert and Mr. Stakes to assert, "in practice and in the literature, 'assisted reset' and 'forced reset' are used synonymously to describe the same class of mechanisms; the difference is semantics, not mechanics." *Id*. at 20 (citation omitted). Given the context, they conclude no false representation has been made. Defendants rebut Plaintiffs' second contention by stating the Disruptor is in exact compliance with claim 19 of the '067, and claim this conclusion is supported by specific measurements and distances outlined by Mr. Stakes and Mr. Nixon. *Id*. They argue Plaintiffs' expert, "offers only a bare, unsupported assertion to the contrary; he discloses no measurements, photographs, or analysis." *Id*. (citation omitted).

The Court finds Plaintiffs have not demonstrated a likelihood of success on their false advertising claim. The Court holds Defendants have presented adequate counter-analysis to bar an establishment of facial falsity. In considering whether Defendants' representations are misleading, Plaintiffs have not presented any evidence of the actual influence of Defendants' representations on consumers. Such a showing is required absent a demonstration of facial falsity. *Zoller Lab'ys, LLC*, 111 F. App'x at 982; *Wyoming*

30

*Beverages*, *Inc.*, No. 17-CV-116-F, at *13. Accordingly, the Court finds Plaintiffs have not sufficiently demonstrated a likelihood of success on the merits as to false advertising.

### III.    *Balancing of Harms*

The balancing of harms element largely entails inventorying the irreparable harms as outlined above. Plaintiffs argue because Defendants' actions in selling an allegedly infringing product are contrary to law, they could not suffer any legally cognizable harm from the requested relief. [ECF No. 7, at 29]. Plaintiffs also assert, "because Partisan Triggers has procured patent insurance, the Defendants are at minimal risk if any of harm from the preliminary injunction." *Id*. (citations omitted). They conclude, "[t]he balance of equities favors injunctive relief." *Id*.

Defendants contend the injunction would force their company out of business. [ECF No. 27, at 27]. They claim, "[a]n injunction would put dozens of employees out of work, and create consequential havoc to the various people who are working in Defendants' business. Even with a sizable bond . . . the damage to Defendants would indeed be extreme and irreparable." *Id*. Conversely, Defendants assert, "in the event Plaintiffs prevail in their claims at trial, they can be made whole by monetary damages. And if Plaintiffs do not prevail at trial, the only hardship to Plaintiffs is *lawful* competition in the marketplace." *Id*. (emphasis in original).

The Court finds the balance of hardships favors Defendants. The Court acknowledges, "[a] record showing that the infringer will be put out of business is a factor . . . but does not control the balance of hardships factor." *Aria Diagnostics*, *Inc*. *v. Sequenom*, *Inc*., 726 F.3d 1296, 1305 (Fed. Cir. 2013) (citing *Intel Corp*. *v. ULSI Sys*.

*Tech., Inc.*, 995 F.2d 1566, 1568, 1570 (Fed.Cir.1993), and *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 708 (Fed. Cir. 1997)). Despite this, because the requested remedy is extreme the Court finds the absence of evidence demonstrating irreparable harm lightens Plaintiffs' proverbial scale—shifting the balance in favor of Defendants. The Court additionally notes Plaintiffs' claim related to Defendants' patent insurance could potentially lessen any concerns it has about Defendants' ability to pay a prospective damages award. *See* [ECF No. 33, at 133].

### IV. Public Interest

The public interest factor, "requires the court to focus on whether 'there exists some critical public interest that would be injured by the grant of preliminary relief.'" *In re BRCA1-, BRCA2-Based Hereditary Cancer Test Pat. Litig.*, 3 F. Supp. 3d 1213, 1275 (D. Utah), *aff'd and remanded sub nom. In re BRCA1- & BRCA2-Based Hereditary Cancer Test Pat. Litig.*, 774 F.3d 755 (Fed. Cir. 2014) (quoting *Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1458 (Fed. Cir. 1988)). "Typically, in a patent infringement case, although there exists a public interest in protecting rights secured by valid patents, the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech Inc.*, 849 F.2d at 1458 (footnotes omitted).

Plaintiffs argue, "permitting the Defendants to flood the market with the accused 3-position forced reset triggers at severely reduced prices serves no legitimate public interest, and only contradicts the public interest." [ECF No. 7, at 30]. They state, "the DOJ under President Trump has permitted RBT to market its triggers on condition that RBT (1)

32

'enforce its patents to prevent infringement that could threaten public safety,' and (2) 'promote the safe and responsible use of its products.'" [ECF No. 7, at 30]; *see* [ECF No. 33, at 14]. Defendants counter, due to the lack of competition in the FRT market, "Plaintiffs have been able to charge the public monopolistic prices for their triggers, and essentially use the additional profits to continue fueling their litigation campaigns." [ECF No. 27, at 28]. They conclude, "[t]he public interest is not served by such tactics and above-market prices but, instead, would be better served by competition." *Id*.

After the hearing, Plaintiffs filed a Supplement to their request attaching the Eastern District of Tennessee's Order granting a preliminary injunction in *ABC IP*, *LLC et al*., *v. Hoffman et al*., Case No. 1:25-00389-CKC-CHS. (Dkt. Nos. 45, 46) (E.D. Tenn. Feb. 11, 2026); [ECF No. 37]. The *Hoffman* case involved ABC's Patent No. 12,038,247 (the "'247 Patent"), ABC's Patent No. 12,031,784 (the "'784 Patent"), and ABC's now-expired Patent No. 7,398,723 (the "'723 Patent"). [ECF No. 37-2, at 3]. There, the defendants were accused of infringing the three patents listed, and digitally releasing free firearm-related designs and 3D print files for public download. *Id*. The government filed a statement of interest in the case. *Id*. at 5.

*Hoffman* is factually distinguishable from the present facts. Here, Defendants note the DOJ entered a statement of interest in the *Hoffman* case, but not in the current litigation. [ECF No. 33, at 24]. The *Hoffman* Court also found "Defendants' unrestricted distribution of Super Safety Files resulted in and would continue to result in widespread copying, third-party manufacturing, and uncontrolled downstream infringement." [ECF No. 37-2, at 11]. But, as mentioned, *Hoffman* Defendants posted allegedly infringing firearm designs online

33

for free public access. *Id*. at 3. Because they freely distributed infringing designs—rather than charging consumers for an allegedly infringing product—this act had the effect of potentially syphoning Plaintiffs' business and also expanding the infringement to potentially countless individuals. The Court correctly concluded the underlying facts presented potentially irreparable public safety and patent infringement concerns. *Id*.

Here, Plaintiffs have failed to demonstrate the current facts present the same public safety and patent infringement concerns. In this case, different patents are at issue, and Defendants have raised a substantial question of validity. *Cf. id*. at 8. Plaintiffs failed to directly and adequately address Defendants' validity and claim construction challenges and Defendants' claims any damages could be resolved through compensatory damages. The Court finds the public interest will not be highly impacted if an injunction is not granted against Defendants. The Court acknowledges the public interest favoring enforcement and protection of patent rights. *See Pfizer, Inc. v. Teva Pharms. USA, Inc*., 429 F.3d 1364, 1382 (Fed. Cir. 2005); *Syntex (USA) LLC*, No. C 01-02214 MJJ, at \*3, *aff'd sub nom. Syntex (U.S.A.) LLC*, 221 F. App'x 1002. But Plaintiffs have not demonstrated irreparable harm will result if the requested relief is not granted. Overall, the Court finds the public interest does not weigh in favor of granting injunctive relief.

### CONCLUSION

The Court finds Plaintiffs have failed to carry the burden of showing irreparable harm in the absence of the requested preliminary injunction. The parties shall proceed under the status quo while the case proceeds on the merits. The findings and conclusions

WYD 44

set forth herein do not constitute a determination on the merits but are findings made in light of the requested preliminary injunction order.

**NOW, THEREFORE, IT IS ORDERED** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 6] is **DENIED**.

Dated this 13th day of February, 2026.

Kelly H. Rankin
United States District Judge

**FILED**



*3:57 pm, 3/11/26*

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation,

    Plaintiffs,

    vs.

PEAK TACTICAL, LLC d/b/a PARTISAN TRIGGERS, a Wyoming limited liability company, and NICHOLAS NORTON, an individual,

    Defendants.

Case No. 26-CV-18-R

---

**ORDER DENYING PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY
[41]**

---

ABC IP, LLC, together with Rare Breed Triggers, Inc. ("Plaintiffs") and Peak Tactical, LLC d/b/a Partisan Triggers, and its owner Nicholas Norton ("Defendants") are in the firearms triggers market. [ECF No. 1, at 1, 13]. In January 2026, Plaintiffs sued Defendants asserting patent infringement and false marking and advertising. *Id*. at 3–4. The next day Plaintiffs filed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI"). [ECF Nos. 6, 7]. The Court denied the Motion. [ECF No. 39]. Plaintiffs now motion the Court for expedited discovery intending to gather relevant evidence to renew their PI request. [ECF Nos. 41, 42]. Defendants oppose the Motion. They claim Plaintiffs have shown neither good cause for expedited discovery nor proper

grounds for reconsideration. [ECF No. 43]. After careful consideration of the briefing and being otherwise fully informed on the matter, the Court denies Plaintiffs' request.

## BACKGROUND

### I.  *General Background*

Plaintiffs sued Defendants for patent infringement, false patent marking, and false advertising under the Lanham Act. [ECF No. 1]. Plaintiffs' claims are based on patents they hold related to forced reset triggers ("FRTs"). *Id*. at 3. An FRT is an aftermarket firearms trigger that operates by mechanically resetting the trigger after each shot, allowing the user to make faster follow-up shots without manually releasing pressure on the trigger. ABC owns four patents generally related to FRTs which can be retrofitted into existing semi-automatic rifles. *Id*. The asserted U.S. Patent numbers are: 10,514,223 ("'223 Patent"); 11,724,003 ("'003 Patent"); 12,036,336 ("'336 Patent"); and 12,274,807 ("'807 Patent") (collectively, "Asserted Patents"). ABC exclusively licenses the Asserted Patents to Rare Breed Triggers, who designs, manufactures, and sells aftermarket triggers, including the RBT FRT-15L3 trigger. *Id*. at 4. Plaintiffs allege Defendants have committed willful acts of direct, contributory, and induced patent infringement in violation of 35 U.S.C. § 271.

Defendants manufacture and distribute the Partisan Disrupter, an aftermarket FRT trigger. *Id*. at 6. Except for minor inconsequential cosmetic features in the outer housing Plaintiffs allege, "the Partisan Disruptor is a direct copy of RBT's FRT-15L3 that one of their distributors, Firearm Systems, sells for $299—*$150 (or 33%) cheaper* than RBT's FRT-15L3." [ECF No. 7, at 13] (emphasis in original). Plaintiffs assert Defendants have

2

falsely advertised their Disruptor by incorrectly describing it as an "assisted reset trigger." [ECF No. 1, at 71–73]. Plaintiffs maintain Defendants have also falsely advertised their product by telling the public the Disruptor implements and is covered by U.S. Patent No. 9,146,067 ("'067"). *Id*. Patent '067 relates to an assisted reset trigger and was issued to Partisan's employee Michael Stakes before the Asserted Patents were filed.

## II. Plaintiffs' Motion for TRO and PI [6 & 7]

In January 2026, Plaintiffs requested a TRO and PI enjoining Defendants' business operations and marketing. [ECF Nos. 6, 7]; FED. R. CIV. P. 65. They asked the Court to enjoin Defendants from: "1. making, using, offering to sell, selling, or importing the accused Partisan Disruptor product, or any substantially identical product; 2. stating publicly . . . the Partisan Disruptor is an assisted reset trigger" and "3. stating publicly . . . the Partisan Disruptor product practices U.S. Patent No. 9,146,067." [ECF No. 6-1, at 2]. Plaintiffs argued all four TRO and PI factors were satisfied.

On February 4, 2026, the Court conducted a hearing on the Motion. Plaintiffs called three witnesses: their corporate representative Lawrence DeMonico, their technical expert Brian Luettke, and their economist Samir Warty. [ECF No. 33, at 4]. Defendants called their employee Michael Stakes, Partisan's spokesperson Ben Woods, and advised at the outset of the hearing their technical expert John Nixon was not present. *Id*. at 5, 12.

After the hearing, the Court denied Plaintiffs' Motion. [ECF No. 39]. In its Order, the Court found all four factors weighed against granting the requested relief. For irreparable harm, the Court found Plaintiffs presented insufficient evidence of price erosion, loss of market share, and reputational damage. *Id*. at 10–17. Specifically, the Court

3

noted Plaintiffs did not present evidence of their prices before and after Defendants entered the market, existence of their established dealer networks, or losses demonstrating reputational harm. *Id*. at 12–13, 15, 17.

Second, the Court addressed Plaintiffs' likelihood of success for (1) patent infringement and (2) false advertising. First, for patent infringement, the Court began with claim construction. It found material disputes existed about the meaning of claim terms— "substantially in-battery position"—central to the infringement analysis. *Id*. at 23. The Court noted neither Plaintiffs nor their expert attempted to provide a direct interpretation of the disputed terms and mechanics. *Id*. at 25. The Court also found Defendants raised a substantial question rebutting the statutory presumption of validity. *Id*. at 27–28. Plaintiffs failed to demonstrate this challenge lacked substantial merit. *Id*. at 28–29. As to false advertising, the Court established Plaintiffs presented no evidence of the advertisements' consumer impact. Thus, they failed to show facial falsity under the Lanham Act. *Id*. at 30.

Third, the Court found the balance of hardships weighed in Defendants' favor because the requested remedy is extreme and Plaintiffs did not show irreparable harm. *Id*. at 31–32. Fourth, the Court acknowledged public interests favoring protecting patent rights, but again noted Plaintiffs failed to demonstrate irreparable harm or a likelihood of success on the merits. *Id*. at 34.

### III.   *Plaintiffs' Motion for Expedited Discovery [41 & 42]*

Plaintiffs now motion the Court for expedited discovery to renew their PI request. [ECF No. 42, at 3]. They argue, "[t]argeted discovery would allow a renewed preliminary injunction motion to be decided on a complete record." *Id*. at 9. Plaintiffs claim they had

insufficient time to respond to Defendants' arguments, neither of Defendants' experts attended the hearing, and Defendants' technical expert never produced the charts he relied on. *Id*. at 4–5, 9–10. They argue granting their request for expedited discovery and allowing reconsideration is consistent with Tenth Circuit precedent. *Id*. at 2, 5–6.

### IV. Defendants' Opposition to Expedited Discovery [43]

Defendants contend, "Plaintiffs['] motion for expedited discovery is best understood for what it is: an attempted reconsideration-by-discovery." [ECF No. 43, at 3, 5–8]. They maintain courts treat attempts to renew interlocutory injunctive rulings with caution. *Id*. (citing *Schmeisser GmbH v. AC-Unity d.o.o*., 2021 U.S. Dist. LEXIS 255447, at *8–9 (D. Wyo. Aug. 23, 2021)). And they routinely deny such requests when there is no evidence of a meaningful change in circumstances, evidence, or law. *Id*. at 4 (citing *SEC v. Young*, 121 F.4th 70, 78 (10th Cir. 2024)). They claim even if expedited discovery is permitted "[t]he Court's order was not driven by a lack of information uniquely in Defendants' possession; it was driven by Plaintiffs' failure to carry their burden with their own evidence and arguments." *Id*. at 4, 8–11.

## RELEVANT LAW

### I. Expedited Discovery

Federal Rule of Civil Procedure 26(d) mandates the typical timing and sequence of discovery. But the court has broad discretion to "alter the timing, sequence and volume of discovery." *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc*., 213 F.R.D. 418, 419 (D. Colo. 2003) (citing FED. R. CIV. P. 26(b)(2) and 26(d)); *Washington v. Correia*, 546 F. App'x 786, 787 (10th Cir. 2013) ("It was well within the court's discretion to decline

5

to authorize expedited discovery."). "However, a party seeking expedited discovery in advance of a Rule 26(f) conference has the burden of showing good cause for the requested departure from usual discovery procedures." *Qwest Commc'ns Int'l, Inc.*, 213 F.R.D. at 419 (citing *Pod–Ners, LLC v. N. Feed & Bean of Lucerne, Ltd. Liability Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002), and *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 614 (D. Ariz. 2001)).

In some cases, "good cause" may be shown where a PI is sought, "or where the moving party has asserted claims of infringement and unfair competition." *Id*. (citations omitted). Still, "early discovery in preliminary injunction circumstances is often limited to jurisdictional issues." *PPEX, LLC v. Buttonwood, Inc.*, No. 21-CV-53-F, 2021 WL 7210184, at *2 (D. Wyo. July 28, 2021) (citing *Biomin Am., Inc. v. Lesaffre Yeast Corp.*, No. 20-2109-HLT, 2020 WL 1659858, at *1 (D. Kan. Apr. 3, 2020)).

## II. Reconsideration

"In reviewing an interlocutory motion to reconsider, 'the court may look to the standard used to review a motion made pursuant to Federal Rule of Civil Procedure 59(e).'" *Schmeisser GmbH*, 2021 U.S. Dist. LEXIS 255447, at *3 (quoting *Ankeney v. Zavaras*, 524 Fed. App'x 454, 458 (10th Cir. 2013)). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servante of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)).

**RULING OF THE COURT**

### I. *Expedited Discovery*

The Court denies Plaintiffs' request for expedited discovery. When ruling on a motion for expedited discovery, courts generally consider "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Smagin v. Yegiazaryan*, No. CV 14-9764-R, 2015 WL 12762270, at *2 (C.D. Cal. Sept. 18, 2015) (citing *Qwest Commc'ns Int'l, Inc.*, 213 F.R.D. at 419).

### A. Factor Test

The Court finds each factor weighs against granting expedited discovery and the appropriateness of reconsideration is on a similar, downward slant. The Court finds (1) no PI is pending; (2) Plaintiffs' purpose underlying expedited discovery is to renew their PI motion; (3) the breadth of discovery and burden on Defendants is weighty given the context; and (4) the comparison of expedited and typical discovery timelines favors denial. The Court will address each finding in detail.

#### 1. *Whether a Preliminary Injunction is Pending*

A pending PI may support granting an expedited discovery request. *Qwest Commc'ns Int'l, Inc.*, 213 F.R.D. at 419. But the Court typically considers whether a PI is pending—not whether one has been ruled on or may be reconsidered. *See id.*; *Am. Equip. Sys., LLC v. Chester*, No. 223CV00680DBBDBP, 2023 WL 8261427, at *3 (D. Utah Nov. 29, 2023). Plaintiffs concede no PI motion is pending but state their intent to renew the

WYD 52

request following expedited discovery. [ECF Nos. 42, 44]. They contend "[t]he absence of a currently pending PI motion is not dispositive []—the inquiry is whether a PI is 'at issue.'" [ECF No. 44, at 6] (citation omitted). Defendants argue there is no PI pending and the request for expedited discovery should have been made before the hearing, if at all. [ECF No. 43, at 11]. The Court finds this factor weighs against granting expedited discovery.

Plaintiffs cite *Am. Equip. Sys.* to suggest a PI need only be "at issue." [ECF No. 44, at 6] (citing *Am. Equip. Sys., LLC*, 2023 WL 8261427, at *3). While the court used the words "at issue" when discussing a PI, it also referred to this factor as "whether a preliminary injunction *is pending*." *Am. Equip. Sys., LLC*, 2023 WL 8261427, at *2–3 (emphasis added). More directly, the court found this factor weighed in favor of expedited discovery where the issuance of a PI had been briefed but no hearing had been set, and no order had been issued. *Id*.

Because a PI motion is not currently pending, the Court finds this factor weighs against granting expedited discovery. *See Qwest Commc'ns Int'l, Inc.*, 213 F.R.D. at 419. As reconsideration is central to Plaintiffs' request, the Court will next address whether Plaintiffs' intent to renew their motion is proper.

### 2. *Purpose for Requesting Expedited Discovery*

Plaintiffs primarily bring this Motion to renew their PI request. Yet they ask the Court to consider this Motion solely as one requesting expedited discovery. [ECF No. 44, at 2–3]. They simply hope the expedited discovery will uncover relevant grounds to renew their motion. *Id*. at 4 ("[T]he discovery Rare Breed requests focuses on information the

8

Court identified as in dispute and could change the Court's analysis, *depending on what the discovery reveals*.") (emphasis added). This circular reasoning is not proper justification for expedited discovery.

As stated, "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servante of Paraclete*, 204 F.3d at 1012 (citing *Brumark Corp.*, 57 F.3d at 948). Plaintiffs do not allege any recognized basis for bringing the renewed motion. The Court will address Plaintiffs' (1) lack of basis, (2) lack of due diligence, and (3) lack of supporting law.

First, because Plaintiffs presented no evidence of an intervening change in controlling law or the need to correct clear error or prevent manifest injustice, their future reconsideration hinges on new, previously unavailable evidence. *See id*. Plaintiffs hope expedited discovery will uncover evidence supporting a compelling PI request. Even so, despite the urgency, Plaintiffs had other procedural options for timing their initial motion. So simply because Plaintiffs did not request expedited discovery earlier does not mean the evidence was "previously unavailable" in the relevant meaning of the phrase. *See United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015) (stating a motion to reconsider should not be used to "advance arguments that could have been raised earlier") (quoting *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014)).

Second, Plaintiffs did not act with due diligence in bringing their original motion. Plaintiffs contend:

9

Defendants filed their opposition five days before the hearing, supported by four declarations, including two from retained experts—totaling 325 pages. Plaintiffs had no reply brief, no depositions, no document discovery, and not even an opportunity to cross-examine Partisan's technical and damages experts whose opinions the Court considered. Neither expert appeared at the hearing.

[ECF No. 42, at 3].

Plaintiffs do not acknowledge they initiated the escalated timeline, and Defendants were under a similar resulting burden. Plaintiffs' Complaint, filed January 15, 2026, contained 1,217 pages of attachments. [ECF No. 1]. Their TRO and PI Motion filed the next day included 263 pages of attachments. [ECF Nos. 6, 7]; *see* [ECF No. 42, at 11 n.2]. Altogether, Defendants reviewed 1,480 pages of attachments before filing their response two weeks later. *See* [ECF Nos. 1, 6, 7, 27] (comparing rate-of-review ratios, Plaintiffs proportionately reviewed 65 pages daily for five days while Defendants reviewed around 105 pages daily for two weeks). Regardless, Plaintiffs did not request Defendants' expert witnesses attend the hearing. *See* [ECF No. 43, at 2]. They also did not request a continuance when the witnesses were not present at the hearing. *Id*.; [ECF No. 33, at 5]. Plaintiffs also do not acknowledge the omissions in their evidence and arguments as asserted by the Court and Defendants. Their briefing failures carry greater weight than any discovery issues cited, and increasingly bare on their due diligence omissions. *PPEX, LLC*, 2021 WL 7210184, at *2 ("If Plaintiff needed this discovery to support their Motion for Preliminary Injunction, it should have waited to file that motion until after discovery opened.").

10

Third, Plaintiffs fail to provide relevant law supporting their renewal. The cases they cite are distinguishable from the current facts. *See* [ECF No. 42, at 8–9] (citing *CLEAR Clinic v. Noem*, No. 25-cv-01906, 2025 WL 3033800, at *2 (D. Or. Oct. 29, 2025); *Equity Bank v. McGregor*, No. 22-1081-DDC-GEB, 2022 WL 1102640, at *8 (D. Kan. Apr. 13, 2022); *Phibro Biodigester v. Murphy-Brown*, *LLC*, No. 4:22-CV-00050-RJS-PK, 2022 WL 17243727, at *3 (D. Utah Nov. 23, 2022), *aff'd sub nom*. *Phibro Biodigester* No. 22-4117, 2024 WL 4541530 (10th Cir. Oct. 22, 2024)).

Plaintiffs claim, "[w]hen the evidentiary record at the TRO or early PI stage is in dispute on key elements, the court has discretion to allow the movant to develop 'a more robust record to litigate the preliminary injunction.'" [ECF No. 42, at 8]. Plaintiffs cite *CLEAR Clinic v. Noem*, stating the court allowed the parties two weeks to brief additional arguments raised at the hearing, and allowed submission of a renewed PI motion. *Id*. (citing *CLEAR Clinic*, 2025 WL 3033800, at *2). There the court noted the plaintiff moved for a mandatory injunction (requiring a party to act) and the parties presented competing evidence. *CLEAR Clinic*, 2025 WL 3033800, at *2. The court explained mandatory injunctions are particularly disfavored, require a clear showing of favorable facts and law, and "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Id*. (citations omitted).

Here, Plaintiffs moved for a prohibitory injunction (maintaining the status quo) which requires a less concrete showing than a mandatory injunction. *Id*. ("A mandatory injunction "'goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored.'") (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir.

11

1994)). Yet they failed to carry their initial burden, and rebuttal, as to each of the four TRO and PI factors. [ECF No. 39].

Plaintiffs also cite two cases to support the notion "[c]ourts in this Circuit have also denied TROs, but then granted expedited discovery to develop the record before a preliminary injunction." [ECF No. 42, at 8] (citing *Equity Bank*, 2022 WL 1102640, at *8, and *Phibro Biodigester*, *LLC*, 2022 WL 17243727, at *3).

Both cases cited differ from the current facts. In *Equity Bank*, the plaintiffs filed a single motion in which they requested (1) a TRO, (2) a PI, and (3) expedited discovery to aid their PI request. *Equity Bank*, 2022 WL 1102640, at *8. The court denied the TRO request, "[b]ut, given that plaintiffs [] indicated their desire to proceed with their request for a preliminary injunction" the court allowed expedited discovery related to the PI. *Id*. Like *CLEAR Clinic*, the parties in *Phibro Biodigester* requested a mandatory injunction. *Phibro Biodigester*, *LLC*, 2022 WL 17243727, at *4. After a hearing and an oral ruling specific to the TRO, the court allowed expedited discovery related to the PI. *Id*. at *3. Presently, Plaintiffs failed to demonstrate any TRO or PI factors weighed in their favor under the lesser standard required for a prohibitory injunction and did not request expedited discovery before this ruling. [ECF No. 39].

Overall Plaintiffs ignore the recognized bases supporting reconsideration. They underscore the urgency of renewal by focusing on hypothetical irreparable harm the Court found unpersuasive. [ECF No. 42, at 6–8]. Plaintiffs again fail to acknowledge their briefing deficiencies independent of the requested discovery. This omission indicates— even if it were permitted—any reconsideration may be futile. *See Schmeisser GmbH*, 2021

U.S. Dist. LEXIS 255447, at *3 (stating reconsideration "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.") (quotations omitted) (quoting *Servante of Paraclete*, 204 F.3d at 1012).

### 3. Breadth of Discovery Requests and Burden on Defendants

The Court will jointly consider the breadth of discovery requests and the burden on Defendants to comply. Plaintiffs contend the expedited discovery does not pose an undue burden because the requested scope is limited, Defendants had notice of the underlying claims, and this information would be produced in the normal course of litigation. [ECF No. 42, at 10]. Defendants claim if granted, the request would impose an undue burden because they will undergo another round of front-loaded expedited proceedings and argue the same issues could have been addressed earlier. [ECF No. 43, at 11].

Plaintiffs request "six interrogatories, six requests for production, and five depositions—each targeting issues Partisan itself placed before the Court." [ECF No. 42, at 3]; *see* [ECF Nos. 42-1, 42-2] (detailing proposed discovery requests). Defendants claim the requested discovery is overly broad and Plaintiffs "do not and cannot show [expedited discovery] will alter the multiple independent grounds for denial that the Court identified in its order." [ECF No. 43, at 11] (alteration added). The Court finds the breadth and burden of Plaintiffs' discovery requests favors denial.

The issue with Plaintiffs' proposal is contextual. It seems part of the burden anticipated by Defendants stems from the reconsideration trailing behind Plaintiffs' expedited discovery. [ECF No. 43, at 11]. Reconsideration would necessarily be followed by additional briefing, proceedings, and argument. There would be additional cost in the

preparation and attendance of all parties—including the preparation and attendance of expert and fact witnesses. Plaintiffs chose the timing of their emergency motion on an exceptionally incomplete record. *See* [ECF Nos. 6, 7]. Many issues raised by Plaintiffs could have been addressed before, or during the hearing if proper arrangements were made.

Purportedly related to irreparable harm, Plaintiffs propose taking three depositions. [ECF No. 42-1, at 2] (proposing to depose Ben Woods, Scott Cragun, and Rule 30(b)(6) Designee). Plaintiffs plan to depose Mr. Woods related to Partisan's sales projections, insurance coverage, dealer networks, and pricing strategies. Similarly, they seek to question Defendants' damages expert Mr. Cragun about "[p]rice erosion methodology and calculations; compensability of damages; lost profits analysis; [and] opinions on irreparable harm." *Id*. (alteration added). And they intend to question the Rule 30(b)(6) Designee about insurance coverage, Partisan's financial condition, overall corporate structure, and ability to satisfy a damages judgment. *Id*. Nine of the twelve discovery requests relate to irreparable harm. [ECF No. 42-2, at 2–3]. Five of their discovery requests relate to Defendants' ability to pay a hypothetical judgment. *Id*. at 2.

Defendants argue Plaintiffs' emphasis on collectability "puts the cart before the horse." [ECF No. 43, at 8]; *see* [ECF No. 44, at 4]. Yet Plaintiffs argue Defendants' financial condition must be assessed before money damages may be considered in place of injunctive relief. [ECF No. 44, at 4] (citing *Robert Bosch LLC v. Pylon Mfg. Corp*., 659 F.3d 1142, 1155–56 (Fed. Cir. 2011)).

While this may be true, Plaintiffs do not acknowledge the crux of the analysis— they must first show irreparable harm requiring compensation. *See Robert Bosch LLC*, 659

14

F.3d at 1156 ("While competitive harms theoretically can be offset by monetary payments in certain circumstances, the likely availability of those monetary payments helps define the circumstances in which this is so."). Plaintiffs failed to provide specific information about how their business operations and reputation have been impacted after Defendants entered the market. [ECF No. 39, at 10–17]. Their current request contains similar flaws. For example, within their collectability argument they present purely hypothetical damages based on Defendants' sales projections for Partisan. [ECF No. 44, at 4 n.2] (stating at their $350 price point, Plaintiffs would yield approximately $86 million more than Defendants "on those same units" projected for Partisan).

Related to likelihood of success, Plaintiffs intend to focus their deposition of John Nixon, Defendant's technical expert, on his "[i]nfringement analysis; claim construction of 'substantially in-battery position'; obviousness theory and prior art analysis; missing claim charts . . .; [and] opinions on '067 Patent and Asserted Patents." [ECF No. 42-1, at 2] (alteration added). Four of their discovery requests relate to the likelihood of success factor. [ECF No. 42-2, at 2]. They argue they should not be required to demonstrate Defendants' validity challenge "lacked substantial merit" "without seeing the charts and questioning the expert who created them." [ECF No. 44, at 6].

At this stage, determining likelihood of success based on an incomplete record poses a predictable challenge. *See*, *e.g.*, *Gillette Co. v. Energizer Holdings*, *Inc.*, 405 F.3d 1367, 1375 (Fed. Cir. 2005) ("[T]his court recognizes the difficulty imposed on a trial court to construe claim terms based upon a preliminary 'likelihood' record."); *Jack Guttman, Inc. v. Kopykake Enters.*, *Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) (recognizing the need for

15

"rolling claim construction . . . particularly [] where issues involved are complex, either due to the nature of the technology or because the meaning of the claims is unclear. . . . These difficulties may be even more acute in the preliminary injunction context[.]") (citations omitted).

The Court finds because Plaintiffs selected the timing for filing their suit and emergency motion, granting their request for expedited discovery in support of reconsideration—with no support for the forthcoming reconsideration—would unduly burden Defendants. The Court will now compare the timelines between typical and expedited discovery.

### 4.  *Comparison Between Typical and Expedited Discovery Timeframes*

Plaintiffs argue this factor is neutral. [ECF No. 42, at 10–11]. They contend, "the need for the requested discovery crystallized only after the Response . . . and hearing revealed what Defendants would rely on and what the Court found unresolved." [ECF No. 44, at 6]. Defendants do not specifically address this point but argue, as stated above, the requested discovery is front-loaded and would present an undue burden because it could have been addressed earlier. [ECF No. 43, at 11]. The Court finds because Plaintiffs have ultimately chosen the timeline of the emergency motions to this point—and because the discovery is only requested in aid of an unsupported reconsideration—this factor weighs against granting expedited discovery.

### B.  Factor Test Conclusion

The listed factors, while non-exhaustive, each weigh against the existence of good cause for Plaintiffs' expedited discovery request. Importantly, Plaintiffs request the

expedited discovery to renew their PI motion. They have no recognized basis for this reconsideration. Thus, the Court finds there is no good cause supporting the request and denies the same.

**CONCLUSION**

**NOW, THEREFORE, IT IS ORDERED** Plaintiffs' Motion for Expedited Discovery [ECF No. 41] is **DENIED**.

Dated this 11th day of March, 2026.

Kelly H. Rankin
United States District Judge

17