No. 26-1527

# United States Court of Appeals
# for the Federal Circuit

**ABC IP LLC, RARE BREED TRIGGERS, INC.,**
*Plaintiffs-Appellants,*

v.

**PEAK TACTICAL LLC, dba Partisan Triggers, NICHOLAS NORTON,**
*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING IN CASE NO. 2:26-CV-00018, JUDGE KELLY H. RANKIN

**APPELLEES' OPPOSITION TO APPELLANTS' CORRECTED EMERGENCY MOTION TO EXPEDITE PROCEEDINGS**

Timothy P. Getzoff
J. Randy Roeser (admission pending)
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80302
Phone: 303.473.2700
tgetzoff@hollandhart.com
jrroeser@hollandhart.com

Paul D. Swanson (admission pending)
Christopher M. Jackson
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone: 303.295.8000
pdswanson@hollandhart.com
cmjackson@hollandhart.com

# CERTIFICATE OF INTEREST

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

**Case Number** 26-1527

**Short Case Caption** ABC IP LLC v. Peak Tactical, LLC

**Filing Party/Entity** Peak Tactical, LLC dba Partisan Triggers, Nicholas Norton

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/27/2026

Signature: /s/ Timothy P. Getzoff

Name: Timothy P. Getzoff

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Peak Tactical, LLC | Nicholas Norton, Richard Seddon, Apex LLC, QOX Consulting, LLC | QOX Consulting, LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable              ☐    Additional pages attached

| | | |
|---|---|---|
| Holland & Hart LLP | Andrew C. Orr | |
| Holland & Hart LLP | Jeffrey S. Pope | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)    ☐ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable              ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION    1

II.   BACKGROUND    2

    A.    Partisan's Senior Technology in the Assisted/Forced-Reset Space ........................................................................................ 2

    B.    Appellants' Lack of Urgency in the Stipulated Proceedings Below ........................................................................................ 2

    C.    The District Court Entered a Detailed, Reasoned Order Denying Emergency Relief Primarily Because Appellants Failed to Show Irreparable Harm. ........................................................ 5

    D.    Appellants' Ongoing Lack of Urgency After the Denial of Their Motion for Preliminary Injunction. ...................................... 8

    E.    The Unrelated Hoffman Proceedings That Implicated Public Interests Not Present Here. .................................................... 9

III.  ARGUMENT    9

    A.    Normal Briefing Will Not Adversely Affect Appellants. .................. 10

    B.    Appellants Failed to Establish Irreparable Harm Below and Cannot Use an Expedited Appeal to Cure Tactical Omissions ......... 12

    C.    Expedition Would Prejudice Appellees; Appellants May File Early Without Forcing Emergency Briefing on Appellees. .............. 14

IV.   CONCLUSION    15

## Table of Authorities

**Page(s)**

### CASES

*Hallmark-Phoenix 3, LLC v. United States*,
   429 Fed. Appx. 983 (Fed. Cir. 2011)................................................................14

*In re Super Safety Patent Litigations*,
   MDL No. 3176, Dkt. 35-1 (J.P.M.L.).................................................................9

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
   276 Fed. Appx. 976 (Fed. Cir. 2008)................................................................15

*Medeva Pharm Suisse A.G. v. Par Pharm. Inc.*,
   430 Fed. Appx. 878 (Fed. Cir. 2011)................................................................14

### STATUTES

35 U.S.C. § 103 ........................................................................................................7

### OTHER AUTHORITIES

Fed. Cir. R. 4 ...........................................................................................................8

Fed. Cir. R. 27 ...........................................................................................10, 12, 14

Local Rule 7.1(b)(2)(C) ...........................................................................................3

-ii-

## INDEX OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| Ex. A | Defendants' Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. No. 27) |
| Ex. B | Exhibit 2 to Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Expedited Discovery (Dkt. No. 42-4) |
| Ex. C | Exhibit A to Defendants' Response in Opposition to Plaintiffs' Motion for Expedited Discovery (Dkt. No. 43-1) |
| Ex. D | Transcript of Hearing Proceedings – Motion for Temporary Restraining Order [excerpts] (Dkt. No. 43-2) |

## I.    INTRODUCTION

The Court should deny Appellants' emergency request for expedited briefing and argument. This case addresses dueling patents for rifle-trigger technology, and this appeal arises from the District of Wyoming's careful denial of Appellees' request for a temporary restraining order and preliminary injunction after a noticed evidentiary hearing under a stipulated framework. *See* Motion Ex. 1. Expedition is reserved for truly time-sensitive cases in which the ordinary schedule will itself cause concrete, imminent prejudice. Appellants do not, and cannot, make that showing here. Instead, they seek to manufacture urgency by repeating the same narrative the district court considered (twice) and rejected (twice) and by distorting the record below. Ultimately, Appellants acted without urgency, received the process they wanted, and now object to the outcome they received. This is not an emergency.

After receiving two rounds of briefing, the district court correctly determined that Appellants have not shown irreparable harm that justifies emergency relief. Appellees Peak Tactical, LLC and Nick Norton (together, "Appellees" or "Partisan") should not be put to the burden and expense of an expedited schedule for Appellants' claimed urgency. The Court should deny the Motion.

-1-

## II.    BACKGROUND

### A.    Partisan's Senior Technology in the Assisted/Forced-Reset Space.

U.S. Patent No. 9,146,067 ("the '067 Patent") "relates to an assisted reset trigger and was issued to Partisan's employee Michael Stakes before [Appellants'] Asserted Patents were filed," and Partisan now owns the '067 Patent. Mot. Ex. 1 at 3–4. The technology embodied in the '067 Patent was developed in 2013, years before Appellants' earliest priority date, and it was commercialized in the market as the Tac-Con 3MR, with widespread trade-press attention and commercial sales long before Rare Breed entered the market. Ex. A at 2–3, 6–14. Thus, the core assisted/forced-reset architecture at issue in this case was first developed and commercially embodied by Partisan, not Rare Breed, as the '067 Patent and Tac-Con 3MR predate Appellants' asserted patents and were developed, patented, validated, and commercially sold years earlier. Ex. A (D. Wyo. Dkt. 27 at 2–3, 6–14). Indeed, Rare Breed tried to acquire the '067 Patent rights from its inventor, underscoring the '067 Patent's significance and seniority. *Id.* at 2–3.

### B.    Appellants' Lack of Urgency in the Stipulated Proceedings Below.

Appellants were aware of Partisan's forthcoming trigger three months before they commenced litigation over it. *See* Ex. A at 16–19 (public announcement and discussion months before suit). When Appellants finally initiated litigation, they did not promptly sue Partisan, the manufacturer and original seller; instead, they pursued a piecemeal, scattershot campaign against retail dealers in multiple jurisdictions,

without seeking emergency injunctive relief in any of those cases. *Id.* Appellants took almost a month to sue Partisan after they started suing its dealers.

Shortly after commencing this case, Appellants moved for a temporary restraining order and preliminary injunction. Mot. Ex. 1 at 1–2. The district court set prompt deadlines (service by January 23, opposition by January 30). *Id.* While Wyoming's Local Rules generally do not permit a reply as of right in these circumstances (*see* D. Wyo. Local Rule 7.1(b)(2)(C)), Appellants never sought leave to file a reply, never sought pre-hearing discovery, never requested permission to submit supplemental briefing, and never requested a continuance of the schedule to address any supposed late-raised issues. Mot. Ex. 2 at 10–11.

The district court scheduled an in-person evidentiary hearing for February 4, 2026, to consider both the temporary restraining order and the preliminary injunction requests. Mot. Ex. 1 at 1–2. It asked the parties to confer regarding "the time required to present each respective argument during the February 4, 2026 Motion Hearing, and the overall time allotment required." The district court did not impose any restrictions on the time allotment, and the parties jointly informed the court below that "three hours (90 minutes per side)" would be sufficient, while asking for guidance about whether the court would hear witnesses. Ex. B at 2. The district court adopted the parties' proposal and allotted "90 minutes per side for the parties to utilize how they deem appropriate." *Id.* The hearing proceeded exactly on that

framework: the district court confirmed the hearing was for "argument and evidence, if necessary," and reiterated the parties' agreed-to time of "90 minutes per side." Ex. D at 3:19–24.

Neither party requested or produced witness lists ahead of the hearing or sought attendance of each other's declarants or other witnesses, and when Partisan advised at the outset of the hearing that its retained technical expert was not present, Appellants did not request a continuance, additional time, leave for supplemental briefing, or any other relief. Ex. D at 5:12–13. In fact, prior to receiving the district court's written order denying their emergency relief, Appellants raised no objection or issue whatsoever with the timing, length, or scope of the hearing or evidence submitted.

Rather, Appellants proceeded full steam ahead on the hearing format they had agreed to, presenting live testimony from their corporate witness and two experts, examining two Partisan witnesses, and even demonstrating the dueling technologies to the district court. Mot. Ex. 2 at 3–4; Ex. D at 4:8–20, 5:12–13. The district court also accommodated Appellants' request for a recess to prepare an additional demonstration and provided extra time beyond the 90 minutes Appellants had requested. *Id.* at 124:18–125:13; *see generally* Mot. Ex. 4 at 129-135 (additional argument after Appellants' share of time expired).

-4-

**C. The District Court Entered a Detailed, Reasoned Order Denying Emergency Relief Primarily Because Appellants Failed to Show Irreparable Harm.**

After the evidentiary hearing, the district court issued a detailed 35-page order denying both a temporary restraining order and a preliminary injunction. Mot. Ex. 1. The district court did not deny relief on a technicality. It addressed each factor and found *every one* weighed against injunctive relief. *Id.* at 8.

Most importantly for present purposes, the court below found Appellants failed to demonstrate irreparable harm—"the single most important factor" under applicable regional circuit law. *Id.* at 9–10. In doing so, the district court identified specific categories of evidence Appellants failed to provide:

1. Lost Business Opportunities. Appellants provided no evidence whatsoever of its sales of its claimed patented products, instead arguing that triggers are "durable goods" and implicitly urging the court to assume it would lose sales that would be irreparable. Mot. Ex. 1 at 10–11. The district court held "lost sales standing alone are insufficient to prove irreparable harm" and are presumed compensable by damages. *Id.* at 12.

2. Price erosion. While acknowledging price erosion can be irreparable in some circumstances, the district court found Appellants offered only "conclusory statements" and did not present the basic evidentiary

-5-

predicates: no evidence they had been forced (or likely would be forced) to lower prices; no pre-/post-entry sales data; no analysis quantifying the harm; and no market evidence tying the alleged erosion to the accused conduct. *Id.* at 11–14. The district court also found Appellants had not rebutted the point that price erosion is a recognized component of compensatory damages. *Id.* at 14.

3. <u>Loss of market share</u>. The district court emphasized that irreparable market displacement may be difficult to quantify and difficult to repair, but Appellants supplied no evidence of displacement. *Id.* at 14–16. Critically, Appellants provided "no evidence they too have an established dealer network," making their "distribution network" displacement theory "misplaced," and they presented no sales data or evidence of shifting dealer loyalty. *Id.* at 15–16.

4. <u>Reputational harm</u>. The district court found Appellants' reputational harm theory speculative and unsupported: while Appellants pointed to online commentary and price differentials, they offered "no evidence" of how any statements affected public perception or that any reputational harm flowed from the alleged torts (rather than mere marketplace competition). *Id.* at 16–17.

In short, the district court's irreparable harm ruling turned on Appellants' own failure to supply evidence within their own control—their own sales data and history, pricing history, market impact, and reputation evidence—not on any supposed inability to "respond to every point" raised by Appellees. *See id.* at 11–17.

The district court likewise found Appellants failed to establish likelihood of success on the merits. On infringement, it held that "material disputes exist regarding the meaning of claim terms that are central to the infringement analysis," particularly "substantially in-battery position," and that Appellants (and their expert) did not provide an express definition or meaningful rebuttal to Defendants' construction-dependent noninfringement analysis. *Id.* at 23–25. On validity, the district court found Defendants raised a "substantial question" of invalidity under § 103 based on prior art including the '067 Patent and related prior art showings, and Appellants failed to demonstrate the challenge "lack[ed] substantial merit." *Id.* at 26–29. Indeed, despite calling their own technical expert live, Appellants put on *no evidence* whatsoever to rebut Partisan's obviousness showing.

Appellants also fault the court below for allegedly "relying" on insurance as evidence that any harm would be reparable. Mot. 2–3. But the district court's order explains it denied relief because Appellants failed to prove irreparable harm and likelihood of success, not because insurance "solved" such harm. Mot. Ex. 1 at 9–17, 19–31. The district court observed only that Appellants' own theory of harm was

-7-

framed in money terms (e.g., lost profits) and noted that Appellants themselves argued insurance could bear on collectability, which in turn "could potentially lessen any concerns" about satisfying a damages award. *Id.* at 31–32. That observation does not convert Appellants' unproven, conclusory harms into irreparable injuries—nor does it support emergency expedition.

> **D.   Appellants' Ongoing Lack of Urgency After the Denial of Their Motion for Preliminary Injunction.**

Appellants' lack of urgency continued after the district court denied emergency relief on February 13, 2026. Appellants did not promptly notice an appeal from the order they now insist is causing existential harm; they waited nearly a month. Mot. 3 n.2; Ex. 1; Practice Note to Fed. Cir. R. 4 ("When a party is considering seeking expedited proceedings on appeal, the party should consider filing its notice of appeal and principal brief well before the applicable deadlines").

Rather than filing a prompt notice of appeal, Appellants instead engaged in new motions practice by seeking expedited discovery in the court below. Mot. Ex. 2 at 4–5. The district court denied that motion in another detailed order, finding Appellants' had not satisfied the "good cause" standard for expedited discovery, and further found that Appellants did not act with due diligence: they initiated the compressed timeline, did not request that declarants appear, did not request a continuance, and could not characterize the sought after evidence as "previously unavailable" simply because they chose to proceed without it. Mot. Ex. 2 at 7–17.

**E.    The Unrelated Hoffman Proceedings That Implicated Public Interests Not Present Here.**

Appellants have filed 30 cases against forced-/assisted-reset trigger makers and sellers in the last nine months. *See In re Super Safety Patent Litigations*, MDL No. 3176, Dkt. 35-1 (J.P.M.L.). One of those thirty is against a Tennessee manufacturer, Tim Hoffman. That case implicates different patents, a different product, and different conduct than Appellants allege against Partisan. Mot. Ex. 1 at 33–34. Moreover, the Tennessee case involved unrestricted public dissemination of firearm-related files and the attendant downstream proliferation concerns that prompted the U.S. Department of Justice to file a statement of interest. *Id.* In contrast, this case involves ordinary commercial sales of a competing product, with no comparable federal intervention or statement of public interest. *Id.*

## III.    ARGUMENT

Expedition is reserved for cases where the Court's ordinary schedule will itself cause concrete, imminent prejudice. That showing is absent here. Appellants' claimed "emergency" is both self-inflicted and unsupported: they took their time before seeking relief, then asked for (and received) an expedited, noticed evidentiary hearing under a framework they proposed—yet still failed to prove irreparable harm by failing to submit any evidence of their non-compensable lost sales, price erosion, market displacement, or reputational injury. Nor did they have any clear entitlement to extraordinary relief on the merits, where the record reflects (at minimum)

unresolved, outcome-determinative claim scope disputes (including the construction of "substantially in-battery") that Appellants never meaningfully addressed, and substantial invalidity evidence they did not rebut. Based on Appellants' own delay and tactical and substantive failures, Appellees should not be forced, yet again, into a compressed schedule.

### A.   Normal Briefing Will Not Adversely Affect Appellants.

Appellants' motion fails at the threshold because they have not shown the type of concrete, imminent irreparable harm that would be "adversely affect[ed]" by proceeding on the ordinary appellate schedule. *See* Practice Note to Fed. Cir. R. 27. Appellants' own conduct, both before the injunction hearing and after, confirms there is no true emergency here.

Appellants' lack of urgency before seeking injunctive relief undercuts any claim of imminent irreparable harm. Appellants were aware of Partisan's forthcoming product months before they sued Partisan, yet waited to file this action. *See* Ex. A at 16–19. When they finally did begin litigating, they did not promptly seek emergency injunctive relief against Partisan; instead they pursued a campaign against Partisan's retailers in multiple jurisdictions without seeking emergency relief in those cases—conduct fundamentally inconsistent with an alleged need for immediate judicial intervention to prevent irreparable injury. *Id.* at 4–5, 16–19; *see also* Mot. Ex. 1 at 5 (summarizing Defendants' delay argument).

-10-

Nor is this a case where expedition is needed because the district court "unduly limited" Appellants' ability to present evidence. Appellants received the expedited hearing format and time allotment they asked for. *See* Ex. B. They presented multiple witnesses, examined Appellees' witnesses, and received additional time and accommodations (including a recess and extra time for a demonstration). Ex. D at 124:18–125:6. They did not request presence of any of Appellees' witnesses at the hearing, request leave to file a reply, request a continuance, and did not seek discovery before the hearing. *See* Mot. Ex. 2 at 9–12. Only after losing did Appellants first seek to obtain "expedited discovery" to tee up a second bite at the apple—an effort the district court denied for lack of diligence. Mot. Ex. 2 at 9–13. Expedition should not be granted to give a party an appellate "do-over" to repair self-inflicted tactical choices.

Appellants' post-denial conduct also confirms there is no imminent irreparable harm requiring an emergency appeal. The district court denied injunctive relief on February 13, 2026. *See* Mot. Ex. 1 at 35. Appellants did not immediately notice an appeal; they waited until March 12, 2026—nearly a month later. *See* Appellants' Mot. at 3 n.2. Appellants' own conduct of delay belies any claim that irreparable harm is imminent such that the Federal Circuit's normal schedule itself will cause concrete prejudice.

-11-

**B.     Appellants Failed to Establish Irreparable Harm Below and Cannot Use an Expedited Appeal to Cure Tactical Omissions.**

Expedition is discretionary and appropriate only where "the normal briefing and disposition schedule may adversely affect one of the parties." Practice Note to Fed. Cir. R. 27. Appellants' motion does not meet that standard because, as the district court found after a noticed evidentiary hearing, Appellants have not shown *any* likely irreparable harm. Mot. Ex. 1.

A preliminary injunction is an extraordinary remedy, not a right, and Appellants certainly have no *clear* right to relief on this record. *See* Mot. Ex. 1 at 8. The record instead reflects that Partisan's technology is the senior architecture in the assisted/forced-reset space: the '067 Patent (filed in 2013) and the Tac-Con 3MR predate Appellants' asserted patents by years, and the district court relied on that prior art in finding Defendants raised a substantial question of invalidity that Appellants made *no effort* to overcome. *See* Mot. Ex. 1 at 27–28; Ex. A at 2–3, 6–14). To the contrary, Rare Breed tried twice to acquire the '067 Patent rights from the inventor, underscoring that if anyone is the late-arriving "copyist" in this space, it is Appellants. *See* Ex. A at 2–3. Even if its patents were valid (they are not), the district court rightly found that Appellants failed to adduce evidence to construe their patents in a way that demonstrated infringement by Partisan. Mot. Ex. 1 at 20–21. Across the board, the court below rejected injunctive relief in favor of Appellants, not based on judicial resolution of disputed questions but on Appellants' inadequate

-12-

showing in support of their chosen purported answers to those questions. *See generally,* Mot. Ex. 1.

Likewise, here and below, Appellants also fail to show imminent, irreparable harm. The ruling below was not based on a "missing" record uniquely within Appellees' control. It was based on Appellants' missing proof, e.g., no pre-/post-entry pricing or sales data, no evidence they were forced to drop prices or would likely be forced to do so, no evidence of market share loss that was difficult to repair, no evidence of an "established dealer network" supposedly being displaced, and no evidence tying alleged reputational harm to the challenged conduct rather than speculation. *Id.* at 12–17. Having failed to establish irreparable harm when it mattered, Appellants cannot now demand emergency appellate treatment as a substitute for the evidentiary showing they neglected to make.

Finally, the public interest they invoke from *Hoffman* is not present here. The U.S. Department of Justice did not file such a statement in this case, which involves ordinary commercial competition over different products and patents, not a proliferation of printable firearm mechanisms.

Appellants' motion does not identify any genuine exigency or clear deprivation of rights that would justify compressing merits review on appeal, particularly where the appeal challenges fact-bound equitable determinations and discretionary rulings made on a fulsome evidentiary record. In short, the normal

-13-

briefing schedule will not "adversely affect" Appellants within the meaning of Federal Circuit Rule 27.

### C. Expedition Would Prejudice Appellees; Appellants May File Early Without Forcing Emergency Briefing on Appellees.

Appellants' proposed expedition would impose an unnecessary burden on Appellees that is untethered to any genuine exigency. Appellants already accelerated proceedings below, received a noticed evidentiary hearing on their requested timetable, then, after losing, sought expedited discovery to tee up another injunction motion, which the district court denied. *See* Mot. Ex. 1; Mot. Ex. 2 at 9–13. Now Appellants ask this Court to impose yet another compressed schedule, forcing Appellees into repeated, front-loaded emergency briefing and argument preparation on a complex record. The Court should not reward a tactic aimed less at prompt merits resolution than at harrying an adversary and multiplying costs.

If Appellants believe speed is necessary, they should have appealed sooner and still are free to self-expedite their briefs (and move preparation of the appendix forward) earlier than required under the existing rules. *Hallmark-Phoenix 3, LLC v. United States*, 429 Fed. Appx. 983, 984 (Fed. Cir. 2011) ("Hallmark also has not expedited the filing of its opening brief and thus did not take advantage of the easiest way to expedite proceedings. Its request to expedite proceedings, which is not developed in the motions papers, is denied."); *Medeva Pharm Suisse A.G. v. Par Pharm. Inc.*, 430 Fed. Appx. 878, 880 (Fed. Cir. 2011) ("The court sees no sound

reason to cut short Medeva's briefing schedule, which in essence is what Par's motion to expedite this appeal requests. Par may of course significantly self-expedite the case by filing its briefs early."); *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 276 Fed. Appx. 976, 977 (Fed. Cir. 2008) ("ATTM may, of course, self-expedite by filing its briefs prior to the due date."). What they are not entitled to do is compel Appellees to brief on an artificially truncated schedule, particularly where the asserted "emergency" is the product of Appellants' own choices below and their failure to make the required evidentiary showing for preliminary relief.

## IV.    CONCLUSION

For the reasons stated above, Appellees respectfully request that the Court deny Appellants' proposed expedited schedule.

Dated: March 27, 2026.                    Respectfully submitted

*/s/ Timothy P. Getzoff*
Timothy P. Getzoff
Randy Roeser (admission pending)
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80302
Phone: 303.473.2700
tgetzoff@hollandhart.com
jrroeser@hollandhart.com

Paul D. Swanson (admission pending)
Christopher M. Jackson
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202

Phone: 303.295.8000
pdswanson@hollandhart.com
cmjackson@hollandhart.com

*Counsel for Appellees*

## **CERTIFICATE OF SERVICE AND FILING**

I hereby certify that on March 27, 2026, a true and correct copy of the foregoing was served upon counsel of record below via email through the Court's CM/ECF system pursuant to FRAP 25(c)(2)(B) and Fed. Cir. R. 25.


*/s/ Timothy P. Getzoff*
Timothy P. Getzoff

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A).  The motion contains 3,318 words, excluding the parts of the motion exempted by Federal Circuit Rule 27.


*/s/ Timothy P. Getzoff*
Timothy P. Getzoff

37414440_v7