No. 26-1527

# United States Court of Appeals for the Federal Circuit

**ABC IP LLC, RARE BREED TRIGGERS INC.,**

***Plaintiffs-Appellants,***

***v.***

**PEAK TACTICAL LLC, dba Partisan Triggers, NICHOLAS NORTON,**

***Defendants-Appellees.***

APPEAL FROM UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING, IN NO. 2:26-CV-00018-KHR, JUDGE KELLY H. RANKIN

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

John W. Thornburgh
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070
thornburgh@fr.com

Carl E. Bruce
Matthew A. Colvin
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070

Benjamin J. Christoff
Elizabeth DeToro
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Suite 1000
Washington, DC 20024
Tel: (202) 783-5070

Glenn D. Bellamy
WOOD HERRON & EVANS, LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel: (513) 707-0243

June 8, 2026

*Attorneys for Plaintiffs-Appellants*
*ABC IP LLC, Rare Breed Triggers, Inc.*

# CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellants ABC IP LLC and Rare Breed Triggers, Inc. certifies the following:

1. Provide the full names of all entities represented by undersigned counsel in this case.

   **Rare Breed Triggers, Inc.**
   **ABC IP, LLC**

2. Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   **Kevin Maxwell**

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   **LAD, LLC**
   **Leleux LLC**
   **1861 LLC**

4. List all law firms, partners, and associates that (a)appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   **<u>Fish & Richardson P.C.</u>: Jory M. Hoffman**
   **<u>Koch Law P.C.</u>: Nathan A. Nicholas; Travis W. Koch**

5. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   **Yes (*see* Notice of Related Case Information at Dkt. 7).**

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

   **None/Not Applicable.**

Dated: June 8, 2026

*/s/ John W. Thornburgh*
John W. Thornburgh

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..... i

TABLE OF AUTHORITIES ..... iv

I. The Court Should Reverse the District Court's Finding That the Likelihood of Success Factor Weighs Against Rare Breed ..... 3

A. The District Court Erred in Finding Likelihood of Success Weighs Against Rare Breed on Patent Infringement ..... 4

1. The District Court Legally Erred by Not Resolving Material Claim Construction Disputes and Instead Weighing Their Mere Existence Against Rare Breed ..... 4

2. Peak Tactical Has Identified No Reason To Construe "Substantially In-Battery" Away From Its Plain Meaning ..... 7

3. Peak Tactical's Non-Infringement Arguments Rest on Two Unsupported Timing Requirements ..... 12

4. The District Court Clearly Erred in Finding a Substantial Question of Invalidity ..... 13

B. The District Court Erred in Finding Likelihood of Success Weighs Against Rare Breed on False Advertising ..... 19

II. The Court Should Reverse the District Court's Finding That the Irreparable Harm Factor Weighs Against Rare Breed ..... 21

III. The Court Should Reverse the District Court's Finding That the Balance of Equities Factor Weighs Against Rare Breed ..... 27

IV. The Court Should Reverse the District Court's Finding That the Public Interest Factor Weighs Against Rare Breed ..... 29

CONCLUSION ..... 29

CERTIFICATE OF SERVICE AND FILING ........................................................ 31

CERTIFICATE OF COMPLIANCE........................................................................ 32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*,
452 F.3d 1331 (Fed. Cir. 2006) ....................26

*Antonious v. Spalding & Evenflo Cos.*,
275 F.3d 1066 (Fed. Cir. 2002) ....................13

*Automated Merchandising Systems, Inc. v. Crane Co.*,
357 F. App'x 297 (Fed. Cir. 2009) ....................26

*BlephEx, LLC v. Myco Indus., Inc.*,
24 F.4th 1391 (Fed. Cir. 2022) ....................14, 16

*Conoco, Inc. v. Energy & Environmental International, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006) ....................8, 9

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*,
269 F.3d 1149 (10th Cir. 2001) ....................18, 27

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013) ....................22

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018) ....................7

*Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*,
156 F.4th 1259 (Fed. Cir. 2025) ....................7

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ....................20

*International Communication Materials, Inc. v. Ricoh Co.*,
108 F.3d 316 (Fed. Cir. 1997) ....................9, 10

*Jack Guttman, Inc. v. Kopykake Enters., Inc.*,
302 F.3d 1352 (Fed. Cir. 2002) ....................4

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996)....................8

*O2 Micro International Ltd. v. Beyond Innovation Technology Co.*,
521 F.3d 1351 (Fed. Cir. 2008) ....................................................2, 4, 6, 9

*Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*,
520 F.3d 1358 (Fed. Cir. 2008) ....................................................16

*Payless Shoesource, Inc. v. Reebok Int'l Ltd.*,
998 F.2d 985 (Fed. Cir. 1993) ....................................................29

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................................................7, 8, 10

*Potato Ventures LLC v. Partnerships & Unincorporated Associations Identified on Schedule A*,
No. 25-2312-DDC-RES, 2025 WL 2256204 (D. Kan. Aug. 7, 2025) ....................................................26

*Procter & Gamble Co. v. Kraft Foods Glob., Inc.*,
549 F.3d 842 (Fed. Cir. 2008) ....................................................4

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011) ....................................................22, 24, 25

*RoDa Drilling Co. v. Siegal*,
552 F.3d 1203 (10th Cir. 2009) ....................................................24, 27

*Thorner v. Sony Comput. Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ....................................................7

*Titan Tire Corp. v. Case New Holland, Inc.*,
566 F.3d 1372 (Fed. Cir. 2009) ....................................................*passim*

*Unwired Planet L.L.C. v. Google, Inc.*,
660 F. App'x 974 (Fed. Cir. 2016) ....................................................8

*Voile Manufacturing Corp. v. Dandurand*,
551 F. Supp. 2d 1301 (D. Utah 2008)....................................................26

*Windsurfing International Inc. v. AMF, Inc.*,
782 F.2d 995 (Fed. Cir. 1986) ....................................................28

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ....................................................................................20

35 U.S.C. § 284 ...........................................................................................22, 28

Peak Tactical's response brief repeats the surface-level refrains that this Court should apply "deference" on appeal; that the district court's analysis was "careful"; and that Rare Breed should be blamed for the procedure by which the parties submitted their arguments and evidence. But going deeper into the record shows only that the district court made errors of law and abused its discretion in weighing all four preliminary injunction factors against Rare Breed.[1]

The common ground between the parties resolves this appeal. Perhaps most remarkably, Peak Tactical nowhere disputes that it was formed for the sole purpose of deliberately and intentionally copying Rare Breed's products, despite having knowledge of Rare Breed's patents—a central theme of Rare Breed's opening brief. Nor does Peak Tactical dispute that its per unit revenue for the Disruptor is less than Rare Breed's per unit profit—and by a significant margin—such that Peak Tactical will have no hope of ever paying back Rare Breed from its Disruptor revenues. And Peak Tactical's infringing sales are projected at 1.68 million units sold over three years. Peak Tactical is thus, undisputedly, taking a bite out of Rare

---

[1] In its opening brief, Rare Breed referred to the Appellees as "Partisan." Dkt. 26. Because Appellees refer to themselves as "Peak Tactical," Rare Breed follows suit in this reply brief. In addition, on June 4, 2026, the Judicial Panel on Multidistrict Litigation issued a Transfer Order in *In re: Rare Breed Triggers Patent Litigation*, MDL No. 3176 (J.P.M.L.) (Dkt. 104), transferring the district court case from which this appeal arose to the Eastern District of Texas and assigning it to the Honorable Amos L. Mazzant, III, for coordinated or consolidated pretrial proceedings.

Breed's market share with copycat products at 33% or greater discounts, and Peak Tactical's witnesses have "no idea" how it could pay Rare Breed back. None of this is disputed, and it establishes the likelihood of Rare Breed's irreparable harm if Peak Tactical's conduct is allowed to continue.

On likelihood of success on patent infringement, the district court identified but chose not to resolve claim construction disputes, instead counting their mere existence against Rare Breed. That was legal error, violating the duty under *O2 Micro* to resolve such disputes, which Peak Tactical concedes applies. In any event, Peak Tactical has never identified any legitimate reason for straying from the plain meaning, such as lexicography or disavowal. Peak Tactical's two non-infringement arguments on appeal are facial attempts to add timing requirements to the claims, when the claims merely recite causation of events irrespective of timing. Peak Tactical further fails to show it is likely to prove invalidity by clear and convincing evidence at trial, as required, when it did not even set out a cognizable or identifiable invalidity theory capable of being assessed. It never even did an element-by-element comparison.

The balance of harms here follows from the irreparable harm and likelihood of success factors. Again, Peak Tactical does not rebut that it was formed for the sole purposes of intentional copying, and in those circumstances this Court has

explained that Peak Tactical should not be heard to complain about its harms from being enjoined.

On public interest, Peak Tactical does not rebut that the district court committed legal error by weighing the public interest against Rare Breed despite never identifying any critical public interest that would be injured by the grant of injunctive relief. Peak Tactical's attempt to distinguish the *Hoffman* case—where the DOJ submitted a statement supporting Rare Breed on public interest—falls flat, since the same public safety interests that applied in *Hoffman* apply with equal force here.

For these reasons, detailed below, the district court abused its discretion in finding that each preliminary injunction factor weighs against Rare Breed, and the Court should reverse.

## I. The Court Should Reverse the District Court's Finding That the Likelihood of Success Factor Weighs Against Rare Breed

The district court erroneously found that likelihood of success weighs against Rare Breed, and the Court should reverse that finding. Peak Tactical's response brief does not cure the district court's reversible errors.

### A. The District Court Erred in Finding Likelihood of Success Weighs Against Rare Breed on Patent Infringement

#### 1. The District Court Legally Erred by Not Resolving Material Claim Construction Disputes and Instead Weighing Their Mere Existence Against Rare Breed

Peak Tactical relies on *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008), to argue that district courts have a "duty to resolve" the claim construction disputes presented to them. RB25. And indeed, the preliminary injunction stage of the case does not justify leaving claim construction disputes unresolved, since district courts are empowered to construe claims preliminarily at this stage, subject to revision later. *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002). Given *O2 Micro's* undisputed applicability, the district court violated its duty under that case by acknowledging the existence of claim construction disputes—on the terms (1) "substantially in-battery," and (2) "set position"—yet leaving them unresolved and instead simply weighing their existence against Rare Breed. *See* Appx22-25; *Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 848 (Fed. Cir. 2008) ("[O]n remand, the district court's consideration of the four factors may require it to interpret the claims . . . ."). The district court even stressed the "central[ity]" of these open claim construction disputes to resolving the likelihood of success on infringement. Appx23.

These disputes were crystallized on the record before the district court. Contrary to Peak Tactical's assertion on appeal, Rare Breed asked the district court in its preliminary injunction motion to apply the plain meaning across the board. Appx1379 ("Here, the asserted claim language should carry its plain and ordinary meaning."); Appx23 (acknowledging Rare Breed's position).

Peak Tactical's own claim construction briefing before the district court totaled one page, limited to arguing based on the opinion of its expert, Mr. Nixon, that "substantially in-battery" has "more than one meaning" allegedly giving rise to an "unresolved claim construction dispute." Appx1666-67; Appx1672-73; Appx1746-47. For context, the term "substantially in-battery" appears in claim language about what happens as the bolt carrier returns to its original or "in-battery" position at the end of cycling after a shot is fired. For example, claim 4 of the '223 Patent recites the following:

> a locking bar . . . movable against the spring bias to a second position when contacted by the bolt carrier reaching a **substantially in-battery position** in which the trigger member can be moved by an external force to the released position.

Appx61-62 (7:6-13). The two possible interpretations of "substantially in-battery" that Mr. Nixon proposed—but that Peak Tactical never specifically mentioned either in its district court brief or its appeal brief—were: "(1) a meaning close to fully in battery (i.e., at or essentially at the in-battery condition), versus (2) a meaning that includes a broader band of near-battery positions during forward

travel." Appx1746. Notably, Peak Tactical did not tell the district court which of these definitions it preferred.

In response, the district court acknowledged the possible constructions presented by the parties and simply found that "material disputes exist regarding the meaning of claim terms that are central to the infringement analysis." Appx22-25. The district court then had the duty to resolve the dispute. *See O2 Micro*, 521 F.3d at 1362 ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."). But it did not.

The same holds true for the parties' dispute about "set position"—one of the terms for which Peak Tactical also argues non-infringement. *See* BB25-26, 54 (citing Appx1669-71, Appx149, Appx89, and Appx119); RB29-30 (citing Appx1669, Appx1750). The parties had made their positions clear. *See, e.g.*, Appx1669-71; Appx1750-52; Appx2293-98; Appx2316-17. And at the hearing, Peak Tactical's lead counsel emphatically declared: "[T]his dispute seems to scream out for claim construction." Appx2327. Here, too, the district court violated its duty under *O2 Micro* by leaving the dispute unresolved and instead counting its existence against Rare Breed. Appx23-25.

The district court's weighing of claim construction disputes it could have resolved against Rare Breed on likelihood of success was an error of law and abuse of discretion, warranting at least vacatur and remand. In addition, because Peak

Tactical's arguments on non-infringement, invalidity, and false advertising lack merit, as discussed below, the Court should reverse.

#### 2. Peak Tactical Has Identified No Reason To Construe "Substantially In-Battery" Away From Its Plain Meaning

Peak Tactical's appeal brief does not dispute any of the key points confirming there is no reason to construe "substantially in-battery" away from its plain meaning. Peak Tactical does not disagree, for example, that the default rule under *Phillips* and its progeny is that the claim language presumably carries the full scope of its plain meaning. *See* RB24-28; BB51-52; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc); *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012); *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 156 F.4th 1259, 1273 (Fed. Cir. 2025). Peak Tactical also does not even allege that the intrinsic record shows some lexicography or disavowal that would justify construing the claims away from their plain language. RB24-28; BB51-52; *Thorner*, 669 F.3d at 1367. Nor does Peak Tactical rebut that claims are allowed to recite terms of degree like "substantially," and those terms need not be clarified with mathematical precision as Peak Tactical has suggested. RB24-28; BB52-53; *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1345-46 (Fed. Cir. 2018). Peak Tactical also never disputes that the portions of the specification that Peak Tactical and Mr. Nixon cited for its proposed construction of "substantially in-battery" are entirely ***consistent*** with the

plain and ordinary meaning of the phrase, not justifying any departure from it. RB24-28; BB53-54. Peak Tactical also fails to rebut that Mr. Nixon's opinions on claim construction have no value since they merely interpret the intrinsic record, which is the role of the Court. RB24-28; BB53-54; *Phillips*, 415 F.3d at 1317; *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Unwired Planet L.L.C. v. Google, Inc.*, 660 F. App'x 974, 977 (Fed. Cir. 2016). Peak Tactical's failure to dispute these points is dispositive: Peak Tactical's proposed narrow construction of "substantially in-battery" cannot be correct, and the phrase "substantially in-battery" should carry its plain and ordinary meaning.

Peak Tactical's other arguments also lack merit. ***First***, Peak Tactical argues that Rare Breed's position on construction of "substantially in-battery" (i.e., plain meaning, BB51-54) is somehow "newly-concocted" and "waived." RB25-26. Peak Tactical is plainly incorrect. Rare Breed has consistently argued, from its motion for preliminary injunction until now, that the plain meaning should apply. Appx1379 ("Here, the asserted claim language should carry its plain and ordinary meaning.").

*Conoco, Inc. v. Energy & Environmental International, L.C.*, 460 F.3d 1349, 1358-59 (Fed. Cir. 2006), is distinguishable and, if anything, undermines Peak Tactical's suggestion that this Court should not consider Rare Breed's claim construction-related arguments. RB25-26. In *Conoco*, appellant EEI challenged

the district court's *sua sponte* construction of certain claim terms, and the Conoco appellees responded that EEI had waived any challenge to the district court's construction by failing to address the terms before the district court. 460 F.3d at 1358-59. This Court ***rejected*** Conoco's argument and ***considered*** EEI's challenge: "Because the court explicitly construed the term *sua sponte* and applied that construction to the facts, we must review its construction de novo." *Id.* at 1359. *Conoco* therefore does not support Peak Tactical's vague suggestions that (i) Rare Breed's plain meaning construction is somehow new or not preserved below, and (ii) that this Court should not consider Rare Breed's claim construction-related arguments. RB25-26. *Conoco* is fully consistent with Rare Breed's position in this appeal—that the Court should adopt the same plain meaning construction that Rare Breed briefed to the district court. BB52.

Peak Tactical's reliance on *International Communication Materials, Inc. v. Ricoh Co.*, 108 F.3d 316, 318 (Fed. Cir. 1997), is also misplaced. As an initial matter, *Ricoh* predates *O2 Micro* by a decade, and Peak Tactical's argument based on *Ricoh* that the district court was not "required to engage in an affirmative claim construction ruling at the preliminary injunction stage," RB26, is incongruent with Peak Tactical's earlier unqualified statement *O2 Micro* imposes upon the district court a "duty to resolve" the claim construction disputes presented to it, RB25. In any event, *Ricoh* is distinguishable. There, the district court cited "substantial open

issues and questions" weighing against a preliminary injunction at that juncture given that "discovery was ongoing and the material presented to the district judge pertaining to claim interpretation was incomplete." 108 F.3d at 318. Here, in contrast, the district court denied Rare Breed's request for further discovery, no further briefing remained, and the district court had before it the parties' respective claim construction positions. *See supra*.

***Second***, Peak Tactical contends the district court was right to fault Rare Breed for not proposing an "express definition" of "substantially in-battery" in response to Peak Tactical's proposed definition . RB25; Appx23; Appx25. Neither Peak Tactical nor the district court have cited any authority requiring a litigant to come up with an "express definition" different than the plain meaning just because the opposing litigant does so, RB25, Appx25, and no such authority exists. Such a rule would conflict with the undisputed rule that claim language should carry its plain meaning as the default. *See supra*; *Phillips*, 415 F.3d at 1312.

***Third***, Peak Tactical argues that Rare Breed's expert "concede[d] the legal necessity of performing claim construction." RB27. The only apparent support Peak Tactical cites for that quotation is its own attorney argument—which itself lacks a citation. RB27 (citing Appx1659 (Peak Tactical's response brief before the district court)). To the extent Peak Tactical may be referring to Rare Breed expert

Mr. Luettke's description of the two-step process for determining patent infringement in the legal background section of his declaration, that language nowhere concedes that something other than the plain meaning of the claim language must be adopted here. Appx1486 ("I have been instructed that a determination of patent infringement requires a two-step analysis: first, the patent claims must be properly construed; and second, a determination must be made as to whether the claims 'read on' the accused product."). Peak Tactical's argument is meritless.

***Lastly***, Peak Tactical's argument that Rare Breed's "procedural choices . . . belie any claim of error" is illogical. Peak Tactical's sole mention of waiver, RB25-26, lacks merit since Rare Breed has consistently sought the plain meaning since its preliminary injunction motion. Appx1379. Even assuming Rare Breed had some obligation to seek, for example, post-hearing briefing—for which Peak Tactical cites no support, RB28, and which Rare Breed does not concede—Rare Breed's supposed failure to do so does not somehow remove all errors from the district court's decision. Peak Tactical's criticism also unfairly ignores that Rare Breed did move for expedited discovery—including a deposition of Mr. Nixon—to help get to the bottom of the claim construction in light of the district court's decision, and the district court denied that motion. Appx3422; Appx36-37.

Thus, this Court should reject Peak Tactical's claim construction arguments on appeal.

### 3. Peak Tactical's Non-Infringement Arguments Rest on Two Unsupported Timing Requirements

As previously briefed, the Court should reverse on likelihood of success because the only non-infringement arguments that Peak Tactical presented below lack merit. BB25-26, 54-55, RB29-30. Rare Breed explained to the district court how Peak Tactical's non-infringement positions involved improperly adding timing requirements to the claim language. Appx2315-18. Peak Tactical's arguments here equally lack merit as well, creating no obstacle to reversal.

Peak Tactical does not dispute that the claims' plain language recites, *inter alia*, (i) "***caus***[***ing***]" events culminating in catching, and (ii) "***caus***[***ing***]" events culminating in the trigger member being forced back into the set position. BB25-26, 54; RB29-30; Appx119 (12:43-60); Appx89 (12:35-52); Appx149 (11:38-12:13). By their plain terms, these limitations are broad enough to cover scenarios where those two recited caused occurrences (i.e., catching and trigger member being forced back into the set position) happen later, so long as the claimed causation is met.

Peak Tactical's added timing requirements lack support in the Asserted Patents. Although Peak Tactical contends that its interpretation of the claims amounts to more than "timing quibbles" and "go[es] to the core" of the claim

language, Peak Tactical nowhere shows where the claim language actually imposes its two timing requirements. RB29-30. And it does not. Peak Tactical argues that catching must happen "***at that time***" of rearward pivoting of the hammer, RB29, but the claim language never uses the phrase "at that time." Appx119 (12:43-51); Appx89 (12:35-43); Appx149 (11:38-12:4). Peak Tactical also states that "the patents define 'set position' as the condition in which the sear and sear catch are in engagement," RB29, but again Peak Tactical cites nothing for support. Having no factual basis, Peak Tactical's two non-infringement arguments fail.

Peak Tactical's argument that this Court should affirm based on independent grounds of non-infringement, RB29, is plainly a request for appellate fact finding. *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1074 (Fed. Cir. 2002) ("Patent infringement is a question of fact."). Peak Tactical does not—and cannot—point to any factual findings that could support affirmance on infringement grounds; instead, Peak Tactical simply points to its own expert's opinions, which are not factual findings. *Id.*

#### 4. The District Court Clearly Erred in Finding a Substantial Question of Invalidity

Peak Tactical does not dispute the key points that preclude its invalidity case from having substantial merit. For example, the claimed technology is "surprisingly complicated," and the asserted claims are lengthy, detailed, and, as Peak Tactical further admits, "hinge on precise, timing-dependent interactions."

BB56; RB30-37. Peak Tactical also does not disagree that the level of complexity here demands more from Peak Tactical and Mr. Nixon than conclusory arguments. RB30-37; BB56-57; *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1403-04 (Fed. Cir. 2022). Yet Peak Tactical never—in claim chart form or otherwise—mapped the claims to prior art references on a limitation-by-limitation basis. BB55-58; RB30-37. Nor did Peak Tactical ever set out any particular reference combinations for obviousness purposes. RB30-37; BB57. Peak Tactical also "anchored" its invalidity case in (i) the '067 Patent, which the examiner specifically signed off as "considered" during prosecution of the '003, '336, and '807 Patents, Appx2127-28, and (ii) the TacCon 3MR, which embodies the '067 Patent. RB7, 13, 31-32; BB27-28, 41-42. The Patent Office's consideration of the '067 Patent during prosecution undisputedly weakens Peak Tactical's invalidity case relying on that patent. RB35; BB56. And the presumption of validity undisputedly applies at all stages of litigation, including the preliminary injunction stage. RB30-37; BB27; *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009).

Peak Tactical also does not disagree that, rather than perform any limitation-by-limitation analysis, it loosely matched prior art references to generalized concepts that unnamed claim limitations supposedly embody—an approach Peak Tactical again uses in its response brief by vaguely referring to "gating and reset

prior art," and "the . . . gating concepts that the Asserted Patents claimed as novel." RB31-32; BB57. Peak Tactical also undisputedly boiled down swaths of text into small summary phrases—in stark contrast to its scrupulous parsing of claim language when arguing non-infringement. BB28; RB30-37. Nor does Peak Tactical dispute that Mr. Nixon did not attend the hearing for cross-examination, BB55; RB30-37, or that Peak Tactical's witnesses contradicted its assertion that there are only two differences between Rare Breed's technology and the prior art. RB30-37; BB57.

On motivation to combine, Peak Tactical argues "Mr. Nixon's . . . opinions were . . . more than adequate," and thus it disagrees that it only relied on attorney argument for support. RB36; BB55, 57-58. But Mr. Nixon's declaration never even mentions the word "motivation" (or any variation), and Peak Tactical does not show otherwise. RB30-37. Nor does Peak Tactical articulate—or show where Mr. Nixon articulated—any legally cognizable motivation to combine, let alone apply it to particular references or identify any evidence in support. *See* RB36. Peak Tactical apparently relies on a single conclusory sentence (i.e., it "would have been obvious to a POSITA at the time to implement in the predictable manner taught by the cited references") that Mr. Nixon copy-and-pasted several times in his declaration when describing invalidity claim charts for the Asserted Patents ***that he never submitted***. RB36 (citing Appx1740-45). An expert simply

concluding without any explanation or evidence that the inventions were "obvious" and "predictable" is not a motivation to combine that can support a "substantial question of invalidity," particularly in light of the other deficiencies in Peak Tactical's invalidity case. *BlephEx*, 24 F.4th at 1403 (conclusory argument "did not pose a substantial question of validity").

Given all of the above, the district court abused its discretion in finding that Peak Tactical met its burden of showing a substantial question of invalidity. Appx27-28. No legally cognizable invalidity theory is discernible from Peak Tactical's submissions; Peak Tactical's invalidity case instead consists of conclusory arguments pitched at the level of broad technical concepts rather than claim limitations, and is devoid of any supported or identifiable motivation to combine. Peak Tactical cannot have met its burden to show "it is more likely than not that the challenger will be able to prove at trial, by clear and convincing evidence, that the patent is invalid." *Titan Tire*, 566 F.3d at 1379; *see also BlephEx*, 24 F.4th at 1400-04 ("[A] substantial question of validity cannot be manufactured through mere supposition . . . ."); *Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008) (expert's hindsight-based analysis was "inappropriate"). The district court misapplied the law in finding that it met that burden. Appx27.

Peak Tactical's remaining arguments do not change the analysis. For example, Peak Tactical criticizes the examination of the Asserted Patents, arguing that the examiner did not consider the '067 Patent, 3MR, or Bonner during prosecution of the '223 Patent, and the examiner did not consider the 3MR product during prosecution of the '003, '336, and '807 Patents. RB31-32. Peak Tactical also argues that the examiner "was presented with 147 references" during prosecution. RB31-32. But this is not a winning line of argument for Peak Tactical, because the Asserted Patents are presumed valid even at the preliminary injunction stage, *Titan Tire*, 566 F.3d at 1377, and Peak Tactical nowhere explains how these facts could somehow cure the significant defects in Peak Tactical's invalidity case. *See supra*; RB31-32.

Peak Tactical also leans heavily on the fact that it did not need to prove invalidity in the same way as at trial. RB30-34, 36-37. But the law does require Peak Tactical to establish the ***likelihood*** that it ***will*** prove the Asserted Patents invalid at trial by clear and convincing evidence, *Titan Tire*, 566 F.3d at 1379, and Peak Tactical could not have done so without even proposing a cognizable invalidity theory that the district court could have assessed. The district court's finding that Peak Tactical met its burden does not comport with the legal standard and should be reversed. Appx27.

Peak Tactical also argues that deference is required, RB31-33, 36-37, but the standard of review does not require affirmance where, as here, the district court's "substantial question" finding was clearly unsupported in the record for the reasons explained above. Appx27-28; *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1153 (10th Cir. 2001).

Peak Tactical further relies on the district court's finding that Rare Breed did not adequately rebut Peak Tactical's invalidity case. RB30, 33-35, 37. But that incorrectly assumes Peak Tactical met its initial burden of showing a "substantial question of invalidity." *Titan Tire*, 566 F.3d at 1376-77. Even if Rare Breed had any rebuttal obligation, which it does not concede, Rare Breed satisfied its burden in closing argument by outlining essential deficiencies in Peak Tactical's invalidity case: the length and complexity of the claims; the absence of any limitation-by-limitation analysis; the presumption of validity; the Patent Office's consideration of prior art that Peak Tactical relied on; the multiplicity of differences between the '067 Patent and Rare Breed's claimed technology; and Peak Tactical's copying, which suggests that Rare Breed's technology is not as similar to the '067 Patent as Peak Tactical argues (otherwise Peak Tactical would not have needed or desired to copy). Appx2318-20. The district court's cursory rejection of these points was an abuse of discretion warranting reversal. Appx28-29.

Finally, as with infringement, Peak Tactical incorrectly contends that its own showing on invalidity—not just the district court's factual findings on invalidity—provide an "independent basis" to affirm on likelihood of success. RB30. Peak Tactical again invites the Court to engage in appellate fact finding.

The Court should reverse the district court's finding that likelihood of success on patent infringement weighs against Rare Breed.

### B. The District Court Erred in Finding Likelihood of Success Weighs Against Rare Breed on False Advertising

Peak Tactical fails to rebut that the Disruptor does not satisfy the requirement in claim 19 of the '067 that the "movement of the trigger body is arrested by the ***tail*** contacting the . . . stop." RB37-40; BB29-34, 58-59. Peak Tactical does not disagree that its own witness's testimony conclusively establishes that, instead of the tail, the trigger's movement is arrested by contact with its ***nose***. RB37-40; BB29-34; Appx2253-54 (65:21-66:25). Nor does Peak Tactical allege that the Disruptor practices any other claim of the '067 Patent, RB37-40; BB58-59, and Peak Tactical does not dispute that it has publicly marketed its Disruptor product as practicing the '067 Patent, RB37-40; BB29-30; Appx1524 ("The Disruptor (US Patent 9146067)"); Appx1465 (same). Because this common ground among the parties forecloses the possibility that Peak Tactical accurately advertises Disruptor as practicing any claim of the '067 Patent, the district court's

finding that likelihood of success on false advertising weighs against Rare Breed is clearly erroneous and should be reversed. Appx29-31.

Peak Tactical's only response is to speculate that the Disruptor might somehow satisfy claim 19 under the doctrine of equivalents. RB39. But Peak Tactical nowhere articulates any such theory. *Id.* Peak Tactical also waived and/or forfeited any such unspecified theory by failing to raise it below. *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) (holding argument forfeited and explaining that case law interchanges waiver and forfeiture). Peak Tactical's argument is no impediment to reversal.

The Court need not reach the remaining issues relating to false advertising, since those matters involve separate and independent reasons for false advertising, and the law does not require multiple independent reasons for false advertising. *See* 15 U.S.C. § 1125(a)(1)(B). Nevertheless, if the Court considers them, they too support reversing the district court's finding that likelihood of success weighs against Rare Breed on false advertising.

Peak Tactical specifically argues that it did not falsely advertise its Disruptor as an "assisted reset trigger," because "assisted reset" and "forced reset" are "interchangeabl[e]." RB38. Even assuming *arguendo* the two product types "overlap[]" or use the "same" "phenomenon," *see* BB33-34, the testimony of Peak Tactical's witness Michael Stakes—which Peak Tactical fails to address—

confirms that the market recognizes a difference between the two product types and that they are in fact functionally different. Appx2248-50 (60:20-62:3). Because the district court's analysis is at odds with this testimony and Peak Tactical fails to address it, the district court's factual finding equating the two product types is clearly erroneous. Appx29-31.

Peak Tactical lastly contends that the Court should apply deference and asserts that the district court's analysis was "careful." RB40. But these conclusory remarks from Peak Tactical's counsel lend no substantive support to the district court's finding that likelihood of success on false advertising weighs against Rare Breed, which this Court should reverse.

## II. The Court Should Reverse the District Court's Finding That the Irreparable Harm Factor Weighs Against Rare Breed

Peak Tactical again does not dispute the key details that establish Rare Breed's likelihood, if not certainty, of irreparable harm. Rare Breed's and Peak Tactical's relevant products undisputedly compete head-to-head in the market. RB40-45; BB59. Notably, Peak Tactical nowhere disagrees that its products are a direct, deliberate, and willful copy of Rare Breed's products—despite that being a central theme of Rare Breed's opening brief. *See generally* RB; BB3, 15, 16, 23, 24, 29, 34, 37, 43, 47, 48, 51, 59-60. Peak Tactical's willfulness only exacerbates the irreparability of Rare Breed's harm by increasing the statutorily recoverable

damages under 35 U.S.C. § 284 and shrinking the relative proportion that Peak Tactical could pay.

Peak Tactical also does not disagree that its conduct forces Rare Breed to compete in the market against its own patented technology, or that under this Court's precedent such a fact suggests and supports irreparable harm. RB40-45; BB59-62; *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1153-54 (Fed. Cir. 2011). Peak Tactical also does not begin to explain how competing against one's own product, sold at a lower price, will not cause irreparable harm to a business.

Nor does Peak Tactical dispute that its "sales have been strong," that it plans to flood the market with 1.68 million accused Disruptor products over three years, or that it has already begun doing so. RB40-45; BB35, 59-60. Rare Breed undisputedly prices its implementing products at $450 or $525, whereas Peak Tactical prices its Disruptors at $299, a 33% or 43% discount vis-à-vis Rare Breed's products. RB40-45; BB59-60. Nor does Peak Tactical dispute that, given Rare Breed's $100 cost per product, Peak Tactical's entire $299 product price is ***significantly—by $50 or $125—below*** Rare Breed's $350 or $425 profit per product. RB40-45; BB59-60. So, even if Peak Tactical wanted to, it undisputedly could never repay Rare Breed's lost profits from Peak Tactical's Disruptor

revenues. Based on Peak Tactical's own projections, Rare Breed's lost profits over the three years of Peak Tactical's Disruptor sales would also exceed $500 million, and Peak Tactical's witnesses testified they had "no idea" how Peak Tactical would pay that amount. RB40-45; BB59-60. According to Peak Tactical's witnesses, the damages award would have to be paid from its two $5 million insurance policies, and the value of Peak Tactical's assets are unknown. RB40-45; BB60. Peak Tactical does not dispute any of these facts establishing the certainty—not mere likelihood—of irreparable financial harm, which Dr. Warty explained can manifest either as price erosion, lost sales, and/or lost market share. BB34 (citing Appx1381-83; Appx1628-37 (¶¶8-27)).

On top of Peak Tactical's mathematical inability to pay back Rare Breed's lost profits with its Disruptor revenues, the undisputed record also illustrates the likelihood that Peak Tactical will cause Rare Breed irreparable reputational harm. Peak Tactical avoids, and never disputes, that it has publicly compared Rare Breed to someone who "chain[s] women and children up in his basement and rape[s] them until someone stops him," in addition to labeling Rare Breed a "bully." RB40-45; BB36, 59-60. Peak Tactical's demonstrated willingness to engage in grotesque mudslinging in the marketplace stands unrebutted and reinforces the likelihood of irreparable harm to Rare Breed.

Given all of the above, there is not merely a "significant risk that [Rare Breed] will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). There is instead a guarantee—assuming infringement and absent some unforeseen circumstance—that Peak Tactical's Disruptor sales will harm Rare Breed in a way that Peak Tactical will never be able to pay back. This is not "speculative," as Peak Tactical states, RB40, 43, 44, 47; it is arithmetic.

Peak Tactical's inability to satisfy monetary damages is itself a form of irreparable harm. *RoDa*, 552 F.3d at 1210. Peak Tactical wrongly argues, and the district court incorrectly stated, that a movant must establish an independent form of irreparable harm before collectability can be considered. RB44-45; Appx49-50. The district court relied on *Bosch* for this analysis, Appx49-50, but the court in *Bosch* merely explained that the availability of damages is a relevant consideration and did not limit the circumstances in which a defendant's financial condition can be considered. 659 F.3d at 1155-56 ("While competitive harms theoretically can be offset by monetary payments in certain circumstances, the likely availability of those monetary payments helps define the circumstances in which this is so."). The Court should therefore reverse the district court's finding that Rare Breed did not show the likelihood of irreparable harm. Appx9-17.

The Court should reject Peak Tactical's response arguments. For example, Peak Tactical argues that Rare Breed needed to seek preliminary injunction in September 2025, and anything after that was "delay[ed]." RB41. But this is misdirection. Peak Tactical did not release the Disruptor until December 2025, and it *deliberately concealed* its infringing design until then. BB17-18 (citing Appx237-39). Peak Tactical fails to identify any evidence to the contrary. RB41.

Peak Tactical argues that the disputed triggers' "durable" nature does not favor irreparability of Rare Breed's harm, because it makes damages more "quantif[iable]." RB41-42. This discussion is beside the point, not curing the fact that Peak Tactical's revenues are not enough to pay back Rare Breed's lost profits. *See supra*. Further, because the district court did not rely on Rare Breed's cited portions of its legal brief and expert declaration in finding facts when arguing about quantifiability, Peak Tactical invites this Court to engage in appellate fact finding by relying on them. RB41-42; Appx10-11. Regardless of quantifiability, Rare Breed's expert Dr. Warty reasonably explained why the triggers' durable nature supports irreparable harm: because "durable goods are typically acquired on a one-time or infrequent basis," such "purchase[s] exhaust[] the relevant demand opportunity." Appx1628. In other words, Rare Breed will have less opportunity to win back repeat customers in future sales (e.g., triggers for different guns) than it would in a market for consumable commodities. *See id.*

Peak Tactical also contends that Rare Breed's submissions on price erosion, lost sales, and market share were "too thin." RB42-43. But its cited cases are nonbinding and/or distinguishable. *Potato Ventures LLC v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 25-2312-DDC-RES, 2025 WL 2256204, at *9 (D. Kan. Aug. 7, 2025), and *Voile Manufacturing Corp. v. Dandurand*, 551 F. Supp. 2d 1301, 1307 (D. Utah 2008), are district court cases that involve conclusory affidavits and that say nothing about the relevant product prices or sales levels. Further, the courts in *Automated Merchandising Systems, Inc. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009), and *Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006), unremarkably explained that lost sales alone do not "require a finding of irreparable harm . . . ***regardless of circumstances***." Those cases did not involve the obstacles to recovery that Rare Breed faces here: Peak Tactical deliberately copied Rare Breed's products, undercutting their prices by 33% and 43%; "sales are good," with Peak Tactical projecting 1.68 million units sold over three years; and Rare Breed has no statistical chance of recovering its lost profits from Peak Tactical's Disruptor's insufficient revenues. *See supra*. Peak Tactical cites no case supporting that Rare Breed's submissions are "too thin" under circumstances like those here.

Peak Tactical also confirms that the district court applied the incorrect legal standard—an unduly strict one that "required proof of ***concrete market impact***." RB43-44. Although Rare Breed disagrees that it did not show concrete market impact as Peak Tactical states, the legal standard that the district court undisputedly applied differs from the correct one—whether there is a "***significant risk*** that [Rare Breed] will experience harm that cannot be compensated after the fact by monetary damages." *RoDa*, 552 F.3d at 1210 (citation and quotation marks omitted); RB40. Indeed, since infringing sales had just begun a few weeks before, it was necessary to focus on future "risk" rather than extensive historic data. The district court's mere recitation of the "significant risk" standard does not save the district court's unduly stringent analysis, and use of the wrong legal standard is not "entitled to deference," RB44. *Dominion Video*, 269 F.3d at 1153 (abuse of discretion includes legal error).

## III. The Court Should Reverse the District Court's Finding That the Balance of Equities Factor Weighs Against Rare Breed

Peak Tactical does not rebut the points that warrant reversal of the district court's finding that the balance of harms weighs against Rare Breed. Peak Tactical does not disagree that balancing the harms flows from the factors discussed above, and once the district court's errors on those factors are corrected this factor too favors Rare Breed. RB45-48; BB63. Again, Peak Tactical nowhere disagrees that it deliberately copied Rare Breed's products, or that copying Rare Breed's products

is the sole reason for Peak Tactical's existence and formation in 2025. RB45-48; BB63-64. These undisputed facts exacerbate Rare Breed's irreparable harm shown above by statutorily entitling Rare Breed to claim more damages under 35 U.S.C. § 284 for willfulness, while Peak Tactical's revenues and ability to pay remain the same. As this Court explained in *Windsurfing International Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986): "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." Peak Tactical's excuse is hardly satisfying that "the Disruptor has not been 'found to infringe'" since the district court erroneously declined to reach infringement based on a claim construction dispute it identified but left unresolved. RB46; *supra* § I.A.1. Peak Tactical's reliance on the outcome of the likelihood of success factor also confirms that, if this Court reverses on likelihood of success, it should also reverse on balancing of harms.

Peak Tactical's remaining brief assertions—for example, that Rare Breed's harms are "speculative" and that "monetary damages will make it whole"—are demonstrably incorrect. *See supra* § II. Nor does Peak Tactical's retort that Rare Breed is to blame because it "elected this course" with its "own litigation choices that shaped the record" make a difference.

## IV. The Court Should Reverse the District Court's Finding That the Public Interest Factor Weighs Against Rare Breed

None of Peak Tactical's cursory arguments on public interest have merit. RB47-48. Peak Tactical does not respond to Rare Breed's argument that the district court applied the wrong legal standard on public interest by finding against Rare Breed on that factor despite never identifying a "critical public interest [that] would be injured by the grant of injunctive relief." RB48; BB64-66. Nor does Peak Tactical dispute that this Court has repudiated the district court's stated basis for finding the public interest weighs against Rare Breed—namely, a potential for higher prices. RB48; BB65; *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993). Although Peak Tactical repeats the district court's reasons for distinguishing the *Hoffman* case, Peak Tactical never rebuts that those points of distinction do not matter, because the DOJ's reasons for supporting preliminary injunction in *Hoffman* apply equally here: the DOJ settled litigation with Rare Breed with respect to these exact types of products on "condition" that Rare Breed will enforce its patent rights and promote their safe use. The fact that *Hoffman* "involved different defendants" and the like is immaterial, and Peak Tactical does not rebut that.

## CONCLUSION

For all of the above reasons, this Court should reverse the district court's decision denying Rare Breed's requested preliminary injunction.

Dated: June 8, 2026

Respectfully submitted,

*/s/ John W. Thornburgh*
John W. Thornburgh
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070

Carl E. Bruce
Matthew A. Colvin
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070

Benjamin J. Christoff
Elizabeth DeToro
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070

Glenn D. Bellamy
WOOD HERRON & EVANS, LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone: (513) 707-0243

***Attorneys for Plaintiffs-Appellants ABC IP LLC; RARE BREED TRIGGERS, INC.***

## CERTIFICATE OF SERVICE AND FILING

I certify that on June 8, 2026, I electronically filed the foregoing **REPLY BRIEF** of Plaintiffs-Appellants using the Court's CM/ECF filing system. Counsel for Defendants-Appellees were electronically served by and through the Court's CM/ECF filing system per Fed. R. App. P. 25 and Fed. Cir. R. 25(e).

*/s/ John W. Thornburgh*
John W. Thornburgh

## CERTIFICATE OF COMPLIANCE

The **REPLY BRIEF** of Plaintiffs Appellants is submitted in accordance with the type-volume limitation of Fed. Cir. R. 32(b). The brief contains 6,608 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2). This brief has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 in Times New Roman, 14 Point.

Dated: June 8, 2026

*/s/ John W. Thornburgh*
John W. Thornburgh